SCRUGGS v. STATE.

Opinion delivered November 12, 1917.

1. CONTINUANCES—ABSENT WITNESSES—DILIGENCE—CUMULATIVE TESTIMONY.—A cause will not be continued on account of absence of a witness where there has not been due diligence in procuring the witnesses' attendance, and where the witnesses' testimony would be merely cumulative.

2. CRIMINAL LAW—OPINION OF JUROR.—Jurors are competent to serve where they have an opinion upon the issue involved, ob-

tained however only from hearsay, and where they stated that they had no prejudice against defendant, and that they could try the case entirely in accordance with the evidence adduced at the trial.

3. CRIMINAL LAW—RE-READING INSTRUCTIONS—WAIVER OF DEFENDANT'S PRESENCE BY HIS COUNSEL.—At the jury's request the court re-read to them its instructions. The defendant was absent from the court room, but his attorney was present. *Held*, in the absence of showing to the contrary, the presumption is that the attorney in a criminal trial had the right to waive the defendant's presence when the instructions were re-read to the jury.

4. HOMICIDE—PLEA OF INSANITY—BEHAVIOR OF ACCUSED.—Defendant, charged with homicide, plead insanity as a defense. The evidence showed that after the killing accused went to his brother's home, got in an automobile, went to the county seat and surrendered. *Held*, it was proper to refuse to charge the jury that in considering the question of whether defendant was sane or insane at the time of the killing it might also consider all his acts at the time, before and since the killing.

5. HOMICIDE—PLEA OF INSANITY—TEST.—In a prosecution for homicide, when the plea of insanity was interposed, and instruction by the court that for the plea to be availing, the defense must show that defendant was incapable of distinguishing between right and wrong in respect to the act with which he is charged.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Brundidge & Neelly,* for appellant.

1. The continuance should have been granted. The testimony of the absent witnesses was material and important. 99 Ark. 394, and cases cited.

2. The court erred in instructing the jury in the absence of defendant. 66 Ark. 206, citing 24 *Id.* 620, and 44 *Id.* 331. Counsel could not waive the right to be present. 66 S. E. 149; 108 Ark. 191; 72 *Id.* 379.

3. The court erred in holding that Gaines and Lee were competent jurors. 79 Ark. 127; 102 *Id.* 180; 91 *Id.* 582.

4. The conviction is against the undisputed testimony. Insanity was proven and the conviction is clearly against the evidence. 96 Ark. 37; 96 *Id.* 500; 101 *Id.* 522.

5. The court erred in giving and refusing instructions.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee; *W. L. Pope,* of counsel.

1. The motion for continuance was properly overruled. No diligence was shown nor application for an order to take depositions was made. Kirby's Digest, § 3157; 32 Ark. 462. The evidence was cumulative. *Holub* v. *State,* ms op.

2. Defendants counsel was present when the instructions were re-read to the jury. No request for his presence was made—his presence was waived. 66 Ark. 206; 25 Pac. 816; 3 Nev. 566; 53 Ind. 294; 40 Ark. 364; 108 *Id.* 191; 20 S. W. 217; 97 *Id.* 137; 89 N. W. 1083; 70 Iowa 505; 38 La. Ann. 459.

3. The jurors objected to were competent. 103 Ark. 21; 104 *Id.* 616.

4. The verdict is not against the evidence. The jury were warranted in finding that defendant was sane.

5. There is no error in the instructions. 120 Ark. 549; 54 *Id.* 588; 40 *Id.* 523. The case was properly submitted to the jury and there is abundant evidence to sustain the verdict.

### STATEMENT OF FACTS.

E. T. Scruggs was indicted for the crime of murder in the first degree charged to have been committed by killing E. L. Benton. Both Scruggs and Benton were married and lived within a mile of each other in White County, Arkansas. Benton became intimate with the wife of Scruggs. Scruggs found out that Benton was having illicit relations with his wife and this caused a difficulty between Scruggs and Benton and also the separation of Scruggs and his wife. The difficulty and separation occurred in November, 1916, and about the first of March, the next spring, Mrs. Scruggs returned to her home. Benton continued his illicit relations with her whenever Scruggs was away from home and Scruggs

was informed of this fact. Both Benton and Scruggs went to a church in the neighborhood in White County, Arkansas, on July 1, 1917. Scruggs remained out of doors for some time and finally went into the house and sat down near Benton with a pistol concealed under his hat. He got up and went out of the house for a while and again came back during the services and sat down close to Benton. He pulled out a pistol from under his hat and shot at Benton three times. One of the shots went in the neck and one in the shoulder ranging downward. There was also one bullet wound in his right arm. He died in the afternoon of the same day and these gun shot wounds caused his death.

The defense of the defendant was insanity. Evidence was adduced in his behalf tending to show that he was informed of the fact that Benton had illicit relations with his wife and that he brooded over this fact until his mind became unbalanced and he did not realize that he was doing wrong at the time he shot and killed Benton.

The jury returned a verdict of guilty of murder in the second degree and fixed his punishment at five years in the State penitentiary. The defendant has appealed.

HART, J., (after stating the facts). (1) It is first contended by counsel for the defendant that the court erred in not granting him a continuance on account of the absence from the State of Irvin Scruggs and Effie Scruggs his wife. In his motion the defendant stated that Irvin Scruggs and Effie Scruggs lived near him, and if present would testify that as far back as the summer of 1915, they discovered that Benton had illicit relations with the wife of the defendant, that they communicated this fact to the defendant and also on subsequent occasions discovered the same fact and communicated it to the defendant; that on the night before the separation of the defendant and his wife in November, 1916, that Benton was found at the home of the defendant at a late hour of the night; that he was confronted by the defendant and admitted to him that he was ruining his

home and that if he would leave him alone that he would leave before sunrise the next morning; that the witnesses would further testify that after this Scruggs became morose and moody and seemed to take no further interest in life; that his condition finally became such they regarded him as insane; that these witnesses had removed to the State of Texas about the first of February, 1917, and that if a continuance was granted him he could procure their attendance at the next term of the court. The court did not err in refusing a continuance on account of the absence of these witnesses. In the first place the killing occurred on the first day of July, 1917. The defendant after the shooting got in a car with his brothers and went to the town of Searcy and surrendered to the sheriff. He was indicted on the 17th of July, 1917, and his trial was commenced on the 27th day of July, 1917. All the parties lived out in the country. The absent witnesses were of the same name as the defendant and the defendant knew where they went when they left the neighborhood. He knew what their testimony would be and made no effort whatever to have their depositions taken. Besides this it was proved by several other witnesses that Benton had been having illicit relations with the wife of Scruggs and no attempt whatever was made by the State to disprove this fact. It is true there were no other witnesses present on the night in November when the defendant and Benton had their difficulty but several witnesses came in after the difficulty and testified in regard to the actions of the parties. They testified that the separation of Scruggs and his wife occurred on account of her illicit relations with Benton and the undisputed evidence shows that the defendant knew of the intimacy of his wife with Benton and killed Benton on this account. The only defense was that he was insane at the time he committed the act. The testimony of the absent witnesses would have been in part as to facts which were undisputed and cumulative as to the other facts.

(2)   It is next contended that the court erred in its ruling as to the competency of two jurors. The jurors were examined separately at great length. We do not deem it necessary to set out their entire testimony. When the whole record bearing on this aspect of the case is read, it is fairly inferable that each of these jurors had formed his opinion from hearsay and not from talking with persons who were witnesses in the case. Each of them said that he had no prejudice against the defendant and that he could try the case entirely in accordance with the evidence adduced at the trial. *Jackson* v. *State,* 103 Ark. 21; *Bealmear* v. *State,* 104 Ark. 616. Hence there was no error in refusing to grant his motion for a continuance.

(3)   It is next insisted that the court erred in instructing the jury in the absence of the defendant. The defendant was confined in jail during the trial. The record shows that after they had deliberated on the case for considerable time, they came back into the court room and requested the court to re-read the instructions. The court re-read all the instructions that it had previously given to the jury but did not give any additional instructions. The defendant was not in the court room at the time but his attorney was present. He did not request the presence of the defendant and did not object to the instructions being re-read to the jury in his absence. He saved his exceptions to the giving of the instructions exactly as he had done when the instructions were first read to the jury, that is to say, he made both general and specific objections to the giving of the instructions on the ground that they were wrong in the respects pointed out by him. In support of their contention, they rely upon the case of *Kinnemer* v. *State,* 66 Ark. 206. In that case the court re-read the instructions exactly as first given to the jury. The defendant was not present when this was done and the record does not show that even his counsel was present. The court held that the re-reading of the instructions was tanta-

mount to instructing the jury originally and that it was error to do so in the absence of the defendant. It is true the court said that even had the record showed affirmatively the presence of defendant's counsel that his counsel could not have waived his presence while the jury was being instructed. This language was not necessary to the decision of that case and the decision must be considered with reference to the facts of that particular case. Hence that case can not be taken as an authority that the presence of the defendant can not be waived by his counsel. There are authorities to the effect that the presence of the defendant at his trial can not be waived by his counsel but we need not consider these cases for this court has taken the contrary view. It is well settled in this State that the defendant has a right to be present during the whole of his trial when any substantive step is taken, but in the case of *Davidson* v. *State,* 108 Ark. 191, it was held that when the record shows that counsel acted for the accused in waiving his right to be present at the rendition of the verdict, it will be presumed in the absence of a showing to the contrary, that they had authority from the accused to waive that right. The right to be present at every stage of the trial is a personal right limited to criminal prosecutions and is not a jurisdictional limitation upon the authority of the court because it secures simply a personal right of the defendant and in no manner affects the jurisdiction of the court. It may be waived by the defendant himself. The defendant has the right to be represented by counsel who it is presumed is always fully advised by the defendant. It is a matter of common knowledge that the rights of the defendant are always better preserved by his attorney than could be done by himself. We can conceive of no good reason why he may not waive by his attorney anything that he might waive in person. In the absence of a showing to the contrary the presumption is that the attorney had the right to waive his presence when the in-

structions were re-read to the jury. Therefore this assignment of error is not well taken.

(4)    It is next insisted that the court erred in telling the jury that in considering the question of whether the defendant was sane or insane at the time of the killing it might also consider all his acts at the time, before and since the killing. Counsel for the defendant claim that there is no evidence in the case showing the acts of the defendant since the killing. The record shows that the defendant walked out of the church deliberately after the shooting, went to the home of one of his brothers and got in an automobile with his brothers and then went to the county seat and surrendered to the sheriff. Hence the court did not err in giving this instruction to the jury.

(5)    It is next insisted that the court erred in giving on its own motion instruction number 5, which is as follows:

"The court instructs the jury that the law presumes every man to be sane until the contrary is shown; and when insanity is set up as a defense by a person accused of crime, in order that the defense may avail, the jury ought to believe from the evidence that at the time of the commission of the alleged crime, the mind of the accused was so far affected with insanity as to render him incapable of distinguishing between right and wrong in respect to the act with which he is charged; or, if he was conscious of the act he was doing and knew its consequences, that he was in consequence of his insanity wrought up to frenzy which rendered him unable to control his actions or direct his movements."

Counsel claim that the instruction is almost a literal copy of one condemned in *Bolling* v. *State*, 54 Ark. 588. A review of that case leads us to the conclusion that counsel are mistaken. The court in that case did condemn an instruction that the defense should show that the accused was at the time of the killing insane to such an extent as not to know right from wrong. The instruction in the present case does not make this the test at

all but on the contrary states the test to be that the defendant must be incapable of distinguishing between right and wrong in respect to the act with which he is charged.

Counsel assign as error the action of the court in giving certain instructions and its refusal to give other instructions. We do not deem it necessary to set out these instructions or to discuss them in detail. We have carefully examined them and find them to be in accord with the principles of law decided in *Bell* v. *State*, 120 Ark. 530.

We find no prejudicial error in the record and the judgment will be affirmed.