MILES *v.* STATE OF INDIANA.

[No. 27,906.   Filed March 27, 1944.]

Robert Lee Brokenburr, of Indianapolis, for appellant.

James A. Emmert, Attorney General, Frank Hamilton, First Assistant Attorney General, and Frank E. Coughlin, Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was tried and found guilty by jury on an indictment for rape and sentenced to imprisonment in the State Prison. His motion for new trial was overruled and the ruling is assigned as error. Affidavits and counter-affidavits were considered as evidence in support of specifications of the motion and have been brought into the record by bill of exceptions. The affidavits .disclose without controversy that after the jury had been deliberating five or six hours the judge proposed to reread the instructions, called to the courtroom the appellant's attorney (who does not appear in this appeal) and asked if he desired that appellant be brought from the jail to the courtroom. The attorney expressly waived appellant's presence whereupon the judge read to the jury for the second time all the written instructions and directed the jury again to retire and attempt to agree upon a verdict. Appellant himself made no affidavit. There is no showing, except by inference from the fact that he was then in jail, that he did not know what was transpiring or that he did or did not authorize such waiver by his attorney. The question is presented whether upon this state of the record the court erred in not requiring appellant's presence in the courtroom.

In many cases it has been said that the accused has the right to be present at every stage of a trial in a prosecution for a felony. See authorities collected in 16 C. J., Criminal Law, 813, 23 C. J. S., Criminal Law, § 973, 14 Am. Jur., Criminal Law,

§ 189. The early history of the development of the rule is found in Bennett & Heard's Leading Criminal Cases, 2d Ed. 435, as a note to *Sperry* v. *The Commonwealth* (1838), 9 Leigh (Va.) 623, wherein it is said:

> "The well established practice in England and in this State is, that a prisoner, accused of felony, must be arraigned in person, and must plead in person; and in all the subsequent proceedings, it is required that he shall appear in person. This practice is stated in 1 Chitty's Criminal Law, 411, 414. . . . In looking into the English forms of entries, it will be found that the appearance of the accused is carefully stated upon the record to have been in his proper person. 4 Chitty's Criminal Law, 268.

> "The principles on which this practice is founded are supposed to be too obvious to need explanation or illustration."

The principles, however, are not "obvious" with respect to the right of the accused to be present during the instruction of the jury. We can see how common-law judges, in order to forestall any possible contention of a convicted defendant that he had been prejudiced by something which occurred in his absence, may have adopted the practice of requiring their clerks to make a record in each case for each day of a trial showing the presence of the accused. This spoke the truth because in the early English trials the prisoner was invariably in court, often in shackles, and was only absent when he escaped from custody. So out of this requirement probably grew the statement that the accused had a right to be present at every stage of the trial. We can now see some reasons, not too strong, why it is for the defendant's advantage to be present during instruction of the jury. He may not be well represented by counsel and himself may be able to

inform counsel or the court of some prejudicial mis-statement of law. Or he may note and protest the inflection of the judge in over-emphasizing instructions to his detriment. He may watch the jurors in entering or leaving the courtroom, or while they are there, for such misconduct as speaking or otherwise communicating with bystanders. While he may be unduly suspicious and think conduct prejudicial when in fact the proceedings are wholly regular, by his presence he has the opportunity of noticing and presenting for further investigation and assignment as error any word or act which he deems irregular or harmful. If these personal privileges were all that the rule involves there would seem to be no reason why they might not be waived.

Some courts have said, however, that there is a public interest in the trial of the accused which prevents such a waiver. One of these is *Hopt* v. *The People of Utah* (1884), 110 U. S. 574, 28 L. Ed. 263, in which Mr. Justice Harlan says that deprivation of his right to be present would be without due process. But his argument upon which the conclusion is based, when analyzed, is that "the Legislature has deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony, that he shall be personally present at the trial . . . ," or, in effect, that it is a personal privilege of the accused. See further criticism in *Davidson* v. *State* (1913), 108 Ark. 191, 158 S. W. 1103. Other courts have said that his presence is jurisdictional so that his absence deprives the court of the right to proceed. See *Andrews* v. *State* (1855), 2 Sneed (34 Tenn.) 550; *State* v. *Reed* (1922), 65 Montana 51, 210 P. 756; *Maurer* v. *People* (1870), 43 N. Y. 1; *Noell* v. *Commonwealth* (1923), 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345. In the last case

it was held that the jury might not view the premises in his absence but in Indiana it is settled to the contrary. *Shular* v. *State* (1885), 105 Ind. 298, 4 N. E. 870, 55 Am. Rep. 211. Most courts, however, do not accept the jurisdictional view but do hold, in many cases, that it is error to proceed in the absence of the accused.

In attempting to sustain the rule as a constitutional privilege of the accused it has been read by implication into the Bill of Rights. See *Andrews* v. *State, supra; State* v. *Blackwelder* (1866), 61 N. C. (1 Phil.) 38; *The People* v. *McGrane* (1929), 336 Ill. 404, 168 N. E. 321. But we find in none of these constitutions any right stated that by reasonable implication includes the right to be present at the time when the jury is instructed unless it may be the right "to be heard by himself and counsel." Ordinarily this is a time for their silence, particularly since instructions have been required to be in writing and since under Rule 1-7 no objections not made prior to their first reading are available on appeal.

Many states have statutes declaratory of the common-law right or requirement, whichever it may be called. Our statute was first enacted in 1843 and again with slight change in 1852 immediately after the adoption of the present constitution, as follows:

> "No person prosecuted for any offense punishable by death or confinement in the state prison or county jail shall be tried unless personally present during the trial." § 9-1801, Burns' 1942 Replacement.

In three cases this statute was said to be mandatory, *State* v. *Wilson* (1875), 50 Ind. 487; *Roberts* v. *State* (1887), 111 Ind. 340, 12 N. E. 500; *Ray* v. *State* (1934), 207 Ind. 370, 192 N. E. 751. We can see no

reason, however, why the requirement of a mandatory statute, if enacted only for the benefit of the accused, may not be as readily waived as a common-law or constitutional right or privilege. In the recent case of *Brown* v. *State* (1941), 219 Ind. 251, 37 N. E. (2d) 73, it was held that the constitutional right to a trial "in the county in which the offense shall have been committed" may be waived and that case cited authorities holding that a person accused of crime may waive his right of trial by jury, his right to be heard by himself and counsel or his right to be confronted by the witnesses face to face. See also *Irwin* v. *State* (1942), 220 Ind. 228, 41 N. E. (2d) 809; *Boggs* v. *State* (1856), 8 Ind. 463. In *Butler* v. *State* (1884), 97 Ind. 378, citing *Veatch* v. *State* (1878), 60 Ind. 291, Judge Elliot showed that by obtaining a new trial upon an indictment for murder and conviction of manslaughter he waives double jeopardy upon the murder charge. If the statute, which is declaratory of the common-law practice, is to be given greater force even than these constitutional privileges it must be because of a public interest to be found behind the rule. We have already suggested the possibility that the common-law judges found that interest in forestalling contentions of prejudicial proceedings in accused's absence. We see no reason why that same public interest does not now exist. Insistence upon the regularity of the proceedings gives stability to our criminal jurisprudence. A record of the presence of the accused at every session of the court during the trial protects the court itself against claims of prejudice which may be asserted not merely on appeal, but in *coram nobis* proceedings filed long afterward, perhaps, when the testimony of the court's officers is unavailable. Though the rule originated merely because of the insufficiency of the process

of the common-law court, see *Rex* v. *Duke* (1697), Holt, 399; 1 Salkeld 400. 1 Ld. Raym. 267, Skin. 684, it has existed for centuries and has been recognized almost universally as fundamental. If we say that the presence of the accused is not required when the instructions are reread may we not go farther and say that it is not required when they are first read? If the presence of his attorney only is sufficient in the one instance why not in the other? There is no apparent place to draw a line. It may be true that appellant, if he had been present, would have remained silent. Since the instructions are not questioned in this appeal we should assume that they correctly state the law. There is no charge that they were read in a prejudicial manner. If they had been we may assume there would have been objection by his attorney. These considerations go to the question of harm. But almost all the cases indicate that harm is not the criterion. When the prisoner's involuntary absence is shown at any stage of the proceedings when he might be harmed, harm is presumed. Perhaps this is an explanation of what was in the minds of the judges when they have said that the requirement of the presence of the accused is mandatory. In this sense the United States Supreme Court was correct in calling the requirement "due process."

It has been held that in the voluntary absence of a prisoner who is on bail the proceedings may continue without error, *State* v. *Smith* (1935), 183 Wash. 136, 48 P. (2d) 581, 100 A. L. R. 474, and note, and that one who contrives to escape the custody of the officers may not by his own conduct destroy the legality of the proceedings. See *State* v. *Wamire* (1861), 16 Ind. 357; *Southerland* v. *State* (1911), 176 Ind. 493, 96 N. E. 583. Nor may the accused and his

attorney purposely walk out of the court room to force discontinuance of the trial. *McCorkle* v. *State* (1859), 14 Ind. 39. We are not dealing with such situations. It need not even be decided whether or not his presence could be waived with his express written consent (see *Davidson* v. *State, supra*), or by his oral statement made in court and entered on its records. Here the appellant was in jail only a short distance removed from the courthouse. He had no control over his actions and so far as appears no knowledge of what was transpiring. If he is to be held to a waiver, it cannot be presumed but should expressly appear. If his attorney may waive, the waiver should be expressly authorized by the defendant and not be left to implication. The authorities overwhelmingly hold in similar cases that reversible error occurred. Following are some, but by no means all, that can be found. While they are put on various grounds, the facts in most of them are essentially like those in the case at bar. *State* v. *Wilcoxen* (1925), 200 Ia. 1250, 206 N. W. 100; *Booth* v. *State* (1912), 65 Tex. Cr. App. 659, 145 S. W. 923; *Jones* v. *State* (1875), 26 Ohio St. 208; *Linbeck* v. *State* (1890), 1 Wash. 336, 25 P. 452; *Bonner* v. *State* (1881), 67 Ga. 510; *Shipp* v. *State* (1881), 11 Tex. Cr. App. 47; *State* v. *Grisafulli* (1939), 135 Ohio St. 94, 19 N. E. (2d) 645; *State* v. *James* (1921), 115 S. C. 243, 107 S. E. 907; *Shafer* v. *State* (1931), 15 Tex. Civ. App. 500, 40 S. W. (2d) 147; *Stroope* v. *State* (1904), Ark. 80 S. W. 749; *State* v. *Myrick* (1888), 38 Kan. 238, 16 P. 330; *Smith* v. *State* (1911), 61 Tex. Cr. App. 328, 135 S. W. 154.

In Arkansas waiver by an attorney has been permitted. The leading case so holding is *Davidson* v. *State, supra*. Because of fear for the defendant's safety, at the request of himself and his attorneys, the

court ordered him, over the objection of the prosecuting attorney, to be taken to a jail in an adjoining county. Apparently the defendant was present when a written stipulation was made and filed by his attorneys agreeing that he need not be present at the time the verdict should be received. The court affirmed a judgment of conviction with two judges dissenting. It was conceded in the majority opinion that "counsel, in the absence of the defendant, and without authority from him cannot waive a personal privilege guaranteed to him by the Constitution," but the court indulged the presumption "in the absence of a showing to the contrary that the attorneys had authority from him to enter into the stipulation waiving his presence." The dissenting judges contended that the defendant was not required to show that "he was prejudiced by any substantial step taken in his trial during his absence, for the probability that he might have been prejudiced by any step taken, or any order made, is all that need be shown to reverse a judgment of conviction, where no affirmative showing is made that no prejudice did result or could have resulted from his absence." Upon this case later Arkansas cases are based which hold that the appellant must show that he was prejudiced and that his attorneys did not have authority to waive his presence. In the absence of such showing the rule in Arkansas now seems to be that authority of the attorney will be presumed. *Nelson* v. *State* (1935), 190 Ark. 1027, 82 S. W. (2d) 519; *Scruggs* v. *State* (1917), 131 Ark. 320, 198 S. W. 694. So far as we have been able to ascertain no other state has taken this view. While it is in line with principles applicable to civil appeals we think that the rule requiring the presence of the accused is so nearly universal and fundamental that no presumptions should be indulged in favor of a

waiver. See *Frank* v. *The State* (1893), 85 Wis. 400, 39 Am. St. Rep. 855; *Harris* v. *The People* (1889), 130 Ill. 457, 22 N. E. 826.

In *Ray* v. *State, supra,* the only question presented on the appeal was alleged error in receiving, in the compulsory absence of the accused, for about twelve minutes testimony which the court said did not tend to connect him with the crime and which was stricken from the record upon his return to the courtroom with instructions to the jury that it be disregarded. This court recognized the statute as mandatory but concluded that there had been no harm. As authority the court cited six cases. In *People* v. *Miller* (1862), 33 Cal. 99, if the accused was absent, of which the judge "did not express himself satisfied," it was momentarily. In *People* v. *Soto* (1884), 65 Cal. 631, 4 P. 664, the jury asked for further instructions and "a portion of the previous given written instructions" was read in the absence of the defendant. Upon discovery of his absence the judge recalled the jury and directed that the jurors disregard what had been read while defendant was absent "and proceeded to read again what he had read when they came in the first time." Without citing authority or the reasons for the practice of requiring the presence of the accused the reviewing court said he was not harmed. In *State* v. *McGraw* (1891), 35 S. C. 283, 145 S. E. 630, the accused was absent only while the jury was deliberating. In *People* v. *Grate* (1878), 68 Mo. 22, where there was shown by affidavit momentary absence during the final argument to the jury the court doubted whether the record showing the presence of the defendant throughout the trial might be contradicted by affidavit. In *State* v. *Clark* (1909), 36 Nev. 472, 135 P. 1083, most of the other

cases just referred to were relied on as holding lack of harm where a few questions were asked a witness in the absence of the defendant. The jury was directed to disregard the testimony and the witnesses were re-examined in his presence. The attitude of the reviewing court is revealed by this statement: "We must regard this slight inadvertence as too trivial to justify the setting aside of the verdict reached after a carefully fought trial lasting three weeks." Attention was called to the fact that the case was tried before the adoption of a statute similar to our own. There was no force given to the common-law requirement of which the statute is merely declarative. The other case is a decision of our Appellate Court in a civil action. We do not regard the authority of these cases as outweighing the considerations which we now feel require a reversal under circumstances such as existed in the case of *Ray* v. *State* and are shown in the case at bar. There is an old saying that "hard cases make bad law." This, we think, was true in *Ray* v. *State,* which accordingly is overruled.

It was urged in oral argument of the case at bar that it is not the function of the trial judge upon his own motion to reinstruct the jury. Certainly it is not the usual nor the better practice. Judges will avoid criticism, if not error, by refraining from any unsolicited interruption of the deliberations of the jury. Other alleged errors either are of no consequence or will doubtless be avoided in another trial.

The judgment is reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 53 N. E. (2d) 779.