UNITED STATES of America, Plaintiff-Appellee,

v.

George MITCHELL, Defendant-Appellant.

No. 13996.

United States Court of Appeals Seventh Circuit.

July 3, 1963.

Mark S. Lieberman, Chicago, Ill., for appellant.

James B. Brennan, U. S. Atty., Donald F. Fitzgerald, Philip L. Padden, Asst. U. S. Attys., Milwaukee, Wis., for appellee.

Before SCHNACKENBERG, KILEY and MAJOR, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

On the verdict of a jury, the district court entered a judgment convicting George Mitchell, defendant, on two counts of an indictment charging illegal sales of marijuana, in violation of § 4742(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4742(a), and on two counts, for facilitating the transportation and concealment of marijuana, in violation of 21 U.S.C.A. § 176a, as added July 18, 1956.

Motion by defendant for a new trial was denied. Defendant was sentenced to imprisonment for five years. He has appealed.

In all proceedings in the district court, defendant was represented by counsel of his own choice.

On the hearing of the motion for a new trial, one of the jurors, Margaret H. Supko, was examined by the court. She testified, *inter alia,* that she was a resident of Racine, Wisconsin, and a subscriber to the Racine Journal-Times. The court called her attention to certain articles therein, submitted by counsel for

defendant, who suggested that she had read them prior to and during the course of defendant's trial.

Under examination by defendant's counsel, Mrs. Supko stated, *inter alia*, that she recognized one article, dated March 16, 1962,[1] which pertained to "some Mexicans" who "were arrested in a narcotics ring". She added that she partly read the newspaper, adding "I always do".

She stated that she did not read the "whole thing * * * I wasn't interested in it." She said that she read briefly, but not the whole article and that the portion she did read was "mostly about the pictures".

Defense counsel asked:

"Q. Had you read anything about the narcotics situation that was claimed to exist in Racine *while you were on the jury when you tried Mr. Mitchell*, the defendant here? (Italics supplied.)

"A. No.

"Q. Any of those articles that you read in the newspaper in Racine have any effect upon your judgment in the Mitchell case?

"A. No, because I don't remember seeing Mr. Mitchell's name in that paper at all—any of the names.

"Q. So, under no circumstances did whatever you read in the paper influence you one way or another for the Government or for Mr. Mitchell?

"A. No."

The court asked:

"Q. The Court admonished you at the very outset of the trial not to read newspapers, and you did not do so; is that correct?

"A. Yes, your Honor."

Government counsel then recalled general questions put to the panel by the judge at the trial, including a general question in regard to their ability to fairly try the case upon the evidence and under the instructions of the court as to the law, in which the court concluded, "Is there anybody who can not so do?"

Government counsel then made this inquiry of Mrs. Supko:

"Q. There was no response from the 12 people who sat on the jury, including yourself. Did you answer that question truthfully at the time?"

Her answer to his question was, "I did".

Defense counsel then interrogated Mrs. Supko and she answered that, on being questioned on voir dire, she was not asked whether she lived in Racine.

Before us, court-appointed counsel for defendant contends that defendant was prejudiced by substantial errors.

First, he says that defendant was prejudiced by said newspaper articles. The inference from the facts as presented to us is that all members of the jury except Mrs. Supko were residents of localities other than Racine, where the newspaper articles were published. It appears from the Racine newspaper article produced by defense counsel that it merely mentions that defendant was one of five men arrested and accused of having sold narcotics in the Racine area, and that he was charged with a sale of marijuana to an agent on February 10, 1962, while four other men arrested were charged with narcotics sales on other dates. The arrest of defendant took place in Charley's Tavern, about an hour and a half after the other four were arrested.

In this court, defendant's counsel contends that he was prejudiced by alleged "publicity [which] associated his arrest and trial with the acts of other accused persons."

We are not so naive as to be impressed by this argument. Even if the Racine newspaper articles had been seen by the jury, it would seem that the effective apprehension of various persons engaged in unlawful traffic in narcotics in a community would depend in large part upon

1. The trial started June 14, 1962.

quick and almost simultaneous arrests of persons against whom sufficient evidence had been accumulated. Such a pattern was followed in the case at bar and the mere fact that others were arrested almost contemporaneously with the defendant lends no support to the argument of defense counsel that defendant was prejudiced. We refuse to hold that intelligent and alert apprehension of narcotics peddlers in a sudden, unannounced series of arrests renders them immune from successful individual prosecutions.

Not only was the case tried in an atmosphere of fairness to the defendant, but the court, after the verdict had been received, produced the one juror who admittedly saw her hometown newspaper which contained the article to which we have referred. Her examination by defense counsel in connection with the motion for a new trial establishes to our satisfaction that she did not permit anything that she saw in the article to in any way affect her action as a juror.

The weakness of defendant's attack upon this verdict is underscored by his ill-advised reliance on Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, where *during the trial, two newspapers got before a substantial number of the jurors*. One reported that defendant had a record of two previous felony convictions, and that he admitted practicing medicine with a $25 diploma he received through the mail. The other reported that he acted as a physician and prescribed restricted drugs, and that he once served a term in the Oklahoma penitentiary for forgery.

Moreover, as is seldom the case, any lingering suspicion or surmise upon which the integrity of the jury's verdict might be impeached in the case at bar has been effectively removed by the court's interrogation of juror Supko, whose forthright explanation removes any lingering doubt as to any validity of the claim of defense counsel that the verdict in this case was in any way influenced by a newspaper publication. Under the instructions of the court, the jury saw the defendants and heard all of the testimony received in evidence, and, in the absence of a showing that the jury was prejudiced in some manner, we cannot attribute to the members thereof inability to apply the law fairly to the facts proved as to each individual defendant.

Defendant was entitled to, and obtained, a jury trial, undoubtedly because of issues of fact which are inherent in this type of case. The credibility of the witnesses, as well as the reasonable inferences which may be drawn from their testimony, were matters exclusively within the province of the jury. The verdict is supported by evidence which the jury must have believed and we have no right to set aside a judgment based upon its verdict.

We appointed Mark S. Lieberman, Esq., of the Illinois bar, to represent defendant in this court. Mr. Lieberman has rendered diligent and able service, for which we express our thanks.

For these reasons, the judgment of the district court is affirmed.

Judgment affirmed.