HARRIS *v.* STATE OF INDIANA.

[No. 30,863. Filed December 20, 1967. Rehearing denied March 6, 1968.]

*Daniel B. Burke, Jr.,* of New Albany, for appellant.

*John J. Dillon,* Attorney General, and *Donald R. Ewers,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal from a conviction in a criminal action brought by the State of Indiana against the appellant charging him with the offense of murder in the first degree. The appellant was charged in an indictment filed in the Floyd Circuit Court which indictment reads as follows:

"The Grand Jurors of the County of Floyd, in the State of Indiana, upon their oaths do present that at said County and State on or about the 2nd day of June, 1964, Robert D. Harris unlawfully, feloniously and purposely, and with premeditated malice, did kill and murder one Robert L. Townsend, also known as Joe Townsend, by then and there unlawfully, feloniously, purposely, and with premeditated malice shooting at and against the said Robert L. Townsend, also known as Joe Townsend, with a deadly weapon, called a pistol, then and there loaded with gunpowder and bullets, and thereby inflicted a mortal wound upon the said

Robert L. Townsend, also known as Joe Townsend, of which mortal wound the said Robert L. Townsend also known as Joe Townsend, then and there died. And so the Grand Jurors aforesaid, upon their oath aforesaid, do say and charge that the said Robert D. Harris, the said Robert L. Townsend, also known as Joe Townsend, in manner and form aforesaid, unlawfully, feloniously, purposely and with premeditated malice, did kill and murder, then and there contrary, to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

The appellant entered his plea of not guilty and trial was had before a jury. A verdict of guilty of murder in the first degree was returned, and appellant's sentence was fixed at life imprisonment. Appropriate judgment was timely entered upon the jury's verdict. A motion for new trial was filed and overruled by the trial court.

The issues presented to this Court by the overruling of appellant's motion for a new trial and assignment of error are as follows:

(1) That the verdict is contrary to law.

(2) That the verdict of the jury is not sustained by sufficient evidence.

(3) Irregularity in the proceedings of the trial court in that it permitted the jury to return into open court for questioning concerning the ability of the jury to reach a verdict in the absence of the appellant.

(4) The overruling of appellant's motions for mistrial and withdrawal of the submission of the case to the jury, such motions being based on newspaper articles in the Louisville Courier-Journal wherein the prosecutor was quoted as saying that the evidence so far was sufficient to convict the defendant.

The argument portion of the appellant's brief combines assignments of error numbered 1 and 2, contending thereby that the verdict is contrary to law by reason of the insufficiency of the evidence to support the conviction of murder in the first degree.

Therefore we look only to the record of the evidence most favorable to the verdict of the jury, and if there is substantial evidence of probative value to sustain each material element of the crime charged beyond a reasonable doubt, the verdict of the jury will not be disturbed by this Court. The evidence, viewed in this manner, reveals the following:

State's witness, Rosalie Garner, testified that on the day in question at approximately 4:30 P.M. she was a witness to the shooting of Joe Townsend stating that after appellant shot Townsend, the appellant stated *"I told you I would get you."*

State's witness, Mary Hendricks, testified that she was present at the deceased's home when *"the appellant just walked in and shot him."* She further identified the appellant in open court and pointed him out and stated that he was the person she saw shoot Joe Townsend, the deceased.

June Brooks, testifying for the State, testified that he knew both the deceased, Joe Townsend, and the appellant and further testified that on the day in question at 4:30 P.M. he was on the premises of Joe Townsend. He stated that he was sitting in the middle of the room and talking to other people present when the appellant walked in and after firing the gun at Townsend stated *"I told you I would get you."*

Dixie Rickman testified he was on the premises at 4:30 P.M. on the day in question and that he was standing at the foot of a bed when the appellant walked in. Rickman then testified: "Then all at once I heard that noise, bam, and Joe said I'm gone and I moved back and Lonesome looked down at him and said *I told you I would get you."* This same witness testified the person he had referred to as "Lonesome" was one and the same person as the appellant in the case.

State's witness, Robert Barney, testified that he oiled a .45 caliber pistol for the appellant which the appellant gave to him and after oiling it he returned the gun to the appellant and the appellant then reloaded the gun. At the request of the

appellant, Barney then took appellant to the home of the deceased where the appellant got out of the car and went inside the house. While the appellant was in the house Barney did not shut off the motor of his car. The appellant was gone for about three minutes. The witness then stated that the appellant later rode uptown with him and requested the witness to take him to Louisville; and upon being asked why the appellant was in a hurry to get to Louisville the appellant informed the witness that he had shot Joe Townsend.

The coroner of Floyd County identified a certain photograph of Townsend as a photo of a person whom he examined on June 2, 1964. The doctor testified that the individual died as a result of hemorrhage secondary to a bullet wound.

A pathologist also testified that he performed an autopsy on the individual in photographs labeled State's exhibits Nos. 5 and 6. The doctor further testified that the cause of death was a massive hemorrhage due to gunshot wound.

William Linck, a New Albany police officer, testified as to his investigation of the shooting on June 2, 1964, stating that when he arrived at the scene he found Mr. Townsend lying on the floor shot in the chest. The officer further testified that he knew the deceased and identified him from the photograph which is State's exhibit No. 5.

William Booth, a New Albany police officer, testified that he found a bullet that was fired from a .45 caliber revolver and that he properly identified said exhibit which is State's exhibit No. 7.

The appellant took the stand on his own behalf and contended that the gun went off accidentally and that he has no explanation as to why the pistol happened to discharged. The appellant further admitted throwing the gun into the Ohio River.

Wilbur Duncan, an expert witness on guns, testified that it takes an average of five (5) pounds of pressure on the trigger to discharge a weapon of this type.

Lastly the appellant admitted fleeing to Louisville and then to Chicago.

We have recited the evidence to negate the appellant's contention that there was insufficient evidence to sustain the charge of first degree murder. It is the State's contention with which we agree that the reasonable inference of premeditation was displayed when the appellant had the pistol cleaned and reloaded it and departed immediately for the premises of Joe Townsend, the deceased. There is no question but that premeditation existed when the appellant uttered the words immediately after the shot "I told you I would get you."

We therefore hold with respect to assignments of error numbered 1 and 2 that there is substantial evidence to sustain the verdict of guilty of murder in the first degree.

Appellant also contends in his motion for new trial that he is entitled to a reversal due to

"3. Irregularity in the proceedings of this Court in that the court permitted the jury to return into open Court for questioning concerning the ability of the jury to reach a verdict after Seven (7) hours of deliberations, the jury having come into open Court in the absence of this defendant."

In support of this allegation of error, the defendant filed an affidavit which, omitting caption and signatures, reads as follows:

"Daniel B. Burke, Jr. being duly sworn upon his oath says:

1. He is one of the attorneys for the defendant.

2. That at the trial of this cause and while the jury was deliberating, the Court caused such jury to be returned into open Court at approximately 11:30 P.M. for the purpose of inquiry if there was any likelihood of its reaching a verdict.

3. That while such jury was in open Court, pursuant to the directions of the Court and while it was being questioned concerning its being able to reach a verdict, the defendant

was not present in Court, but was in the custody of the Sheriff in the County Jail.

4. That while the jury was in open Court to answer questions from the Judge thereof, the defendant was not present and thereafter the jury was returned to its room to continue its deliberations after which it reached a verdict."

In rebuttal, the State of Indiana filed a counter-affidavit which, omitting captions and signature, reads as follows:

"Joseph E. Earl, being duly sworn upon his oath says:

1. He is the prosecuting attorney in this cause.

2. That prior to the jury being called into court the attorneys for defendant waived defendant's presence, after having been asked specifically by the court if the defendant wished to be present.

3. The court asked the jury if they were hopelessly deadlocked, the jury reported they felt they could reach a verdict, whereupon the court allowed the jury to return to deliberation.

4. No instructions were given to the jury at this time." Ind. Anno. Stat. § 9-1801 (1956) provides:

"No person prosecuted for any offense punishable by death, or by confinement in the state prison or county jail, shall be tried unless personally present during the trial."

It has been held that this statute is implementive of the Constitution of Indiana, Article 1, § 13, and that the right to be present at trial includes the right to be present in the courtroom at every stage of the proceedings requiring the presence of the jury. *Dean* v. *State* (1955), 234 Ind. 568, 572, 130 N. E. 2d 126, 128. If this right can be waived at all, such waiver should be expressly given by the defendant, *Miles* v. *State* (1944), 222 Ind. 312, 319, 53 N. E. 2d 779, 782. Appellant in the case at bar made no such waiver.

Therefore, it is inescapable that the trial court committed an error in failing to have appellant present at the time he

questioned the jury as to the likelihood of a verdict. But the matter does not end there. Not all error is prejudicial error. Not even all constitutional error is prejudicial.

"Where it appears on appeal from a judgment of conviction in a criminal case that the defendant has been denied a right guaranteed by the Constitution, such a showing requires a reversal, unless the record clearly shows that the right was waived *or that no injury could have resulted to the accused by reason of such denial.*" Batchelor v. State (1920), 189 Ind. 69, 78, 125 N. E. 773, 776. (our emphasis)

The Indiana cases dealing with a violation of the accused's right to be present at trial have not consistently recognized that the distinction between prejudicial and harmless error is an applicable concept in determining whether the denial of such right constitutes reversible error.

In *State* v. *Wilson* (1875), 50 Ind. 487, 19 Am. Rep. 719, the jury was returned to the courtroom after thirty-two (32) hours of deliberation, whereupon the trial judge questioned the jury and found that they were hopelessly deadlocked. The trial judge then discharged the jury, all of these proceedings having taken place outside of the presence of the defendant. The defendant later set up the discharge of the jury out of his presence as a bar to a second prosecution and was successful. In supporting its position that a second prosecution was barred, this Court said:

"We are of the opinion that the discharge of the jury . . . would have been proper, if the appellee (defendant) had been present in court, even though he had objected to the discharge, unless he had shown some good ground why the jury should not have been discharged; and in such case the discharge could not have been pleaded in bar of the further prosecution of the case." (citations omitted)

Implicit in this language are the propositions that:

(1) an erroneous practice was followed in that the court did not require defendant to be present during these proceedings and

(2) defendant was prejudiced by his absence at the point in the proceedings at which an objection could have been interposed, had defendant been present.

In *Roberts* v. *State* (1887), 111 Ind. 340, 12 N. E. 500, the trial court recalled the jury, informed the members of the jury that one of the instructions that had been previously given them was erroneous, repeated the erroneous instruction and then gave another instruction which itself might have been challenged as erroneous. All of this occurred out of defendant's presence.

Here again, a proceeding was had out of the presence of the defendant and affirmative action was taken to which the defendant could have interposed an objection. In reversing the defendant's conviction, however, this Court took the position that the requirement of the defendant's presence was mandatory and the conviction would have to be reversed without regard to whether or not defendant was prejudiced by his absence. To the extent *Roberts* would allow a reversal without a requirement of prejudicial error, the language of that case is hereby overruled.

In *Miles* v. *State, supra,* the trial court, out of defendant's presence, re-read to the jury the original instructions that had been given them at the close of the trial in chief. In *Miles,* this Court stated that the defendant's presence was a mandatory requirement, and then said:

> "When the prisoner's involuntary absence is shown at any stage of the proceedings when he might be harmed, harm is presumed." 222 Ind. at 318.

We interpret the *Miles* case to mean that an allegation of irregularity in a motion for new trial to the effect that defendant was involuntarily absent from any stage of the proceedings without a waiver, raises a *rebuttable* presumption that prejudicial error has been committed. Such presumption may be overcome by counter-vailing affi-

davits filed by the State. The decision on such issue then rests on the trial court, subject to review.

In *Dean* v. *State, supra,* the trial court recalled the jury to the courtroom and, out of defendant's presence, gave oral instructions as to the jury's duty to reach a verdict. In reversing defendant's conviction, this Court quoted at length from the case of *Fina* v. *United States* (1931), 46 F. 2d 643. The *Fina* case, and therefore the *Dean* case, convey the impression that since failure to provide for the presence of the accused at every stage of the proceedings is a violation of the accused's constitutional right, such an error is prejudicial *per se,* and calls for a reversal.

But that is not a proper interpretation of present law in the area of constitutional error. We have already alluded to ■ *Batchelor* v. *State, supra,* which held that, in Indiana, the denial of a constitutional right raises only a rebuttable presumption of prejudice. That case is still the law in this State. Nor is Indiana alone among the states in so holding. In *Schindler* v. *Municipal Court in and for the County of Los Angeles* (1962), 21 Cal. Rptr. 217, it was held that a rebuttable presumption of prejudice arises where defendant's right to a speedy trial is violated. In the Oklahoma case of *Bird* v. *State* (1961), 362 P. 2d 117 the testimony of a police officer who had testified at a preliminary hearing was read to the jury during trial, thus denying defendant his right of confrontation. But the appellate court refused to reverse, noting that the police officer's testimony was only cumulative and saying that the denial of a constitutional right of an accused only requires reversal if the accused is harmed thereby.

Similarly, it has been held that where mandatory statutory procedures are not followed, a rebuttable presumption of prejudice arises. *Montos* v. *State* (1956), 95 S. E. 2d 792; *McGonagill* v. *Superior Court, County of San Diego* (1963), 29 Cal. Rptr. 485.

Furthermore, only this year, the Supreme Court of the United States has held that the harmless error concept is ap-

plicable to constitutional error on the federal level, and that once a constitutional error is shown, a rebuttable presumption arises that defendant was prejudiced thereby. *Chapman* v. *State of California* (1967), — U.S. —, 87 S. Ct. 824.

It is clear, therefore, that the Indiana cases, and cases from other states and from the Supreme Court of the United States, encourage and support our holding that constitutional ■ error is not reversible error where the State bears the burden of demonstrating that the accused was in no way prejudiced by such error.

This holding is also consistent with our statutory provision setting out the causes available to a defendant in making his motion for new trial:

> "9-1903. The court shall grant a new trial to the defendant for the following causes or any of them:
>
> First. Irregularity in the proceedings of the court, or jury, or for any order of the court or abuse of discretion *by which the defendant was prevented from having a fair trial . . .*" Ind. Anno. Stat. § 9-1903 (1956). (our emphasis)

It is indisputable that, under this statute, if the State has shown that defendant was not deprived of a fair trial as a result of an alleged error, the motion for new trial should not be granted.

We feel that this rule of reason and practicality should be universally applied to all allegations of error made in a motion for new trial, whether such allegations encompass constitutional errors or not.

In the case at bar, the State has filed a counter-affidavit, *supra*, setting forth facts sufficient to demonstrate that appellant incurred no prejudice as a result of his absence. The State's counter-affidavit shows that when appellant was absent from the courtroom, no affirmative action was taken to which appellant could have objected since all the trial court did was question the jury as to the likelihood of a verdict, and send them back to deliberate immediately thereafter.

Upon the basis of appellant's motion for new trial and the State's counter-affidavit filed in opposition thereto, the trial court found no cause for granting a new trial. We hold ▮ that the trial court was correct in that holding since the State has overcome the presumption of prejudice raised by appellant's third allegation of error. *Batchelor* v. *State, supra.*

To the extent that the holding in *Dean* v. *State, supra,* conflicts with our decision in this case, the *Dean* holding is disapproved and overruled.

Turning our attention to the alleged fourth assignment of error the appellant moved the court for a mistrial requesting that the submission of the case be withdrawn from the jury for the reason that a certain newspaper article appeared in the Louisville Courier Journal, Indiana edition thereof, which article is in words and figures as follows, to-wit:

"OILING PISTOL TOLD TO MURDER JURY—

The first-degree murder trial of Robert Harris, 38, enters its second day today in Floyd Circuit Court at New Albany. Harris, of 524 Pearl, is accused of the June 3 shooting of Robert Townsend, 50, at the victim's home at 423 Ayers.

Prosecutor Joseph E. Earl said he expects to wind up his presentation today. New Albany attorney John A. Cody, Jr., is the defense counsel.

In yesterday's testimony, banker Frank M. Benson, said Harris borrowed $200 from a New Albany bank on the morning of the day of the shooting. Auto salesman Barney Smith testified that Harris asked him to oil Harris' revolver on the afternoon of the shooting. Harris later told the salesman he shot Townsend, the salesman said.

Earl said the testimony supports his theory of a premeditated killing. To date, no theory for the motive has been introduced.

Earl said the jury can find the defendant innocent or guilty of first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter."

The record indicates that appellant's counsel requested the court to determine if the jury read the article. Complying

with the appellant's request the court made the following inquiry of the jury: "Has any member of the jury read the article concerning the trial in this morning's Courier Journal?" The record indicates that there was no response from the jury, in other words, the jury was silent. The appellant offered no evidence that any of the jurors had read the newspaper article and no evidence was offered to show that the appellant had been prejudiced. It seems that the appellant's contention may be simply stated as follows: that the mere publication of the article is grounds for reversal. As stated here there are no affidavits attached to his motion for a new trial showing that any of the jurors read the article and, that if any had read the article they were influenced thereby.

In *Wilson* v. *State* (1966), 247 Ind. 454, 217 N. E. 2d 147, this Court held that there is no presumption that the jury violated the court's admonition not to read newspaper articles concerning the trial. This rule is also supported by *Marshall* v. *United States* (1959), 360 U.S. 310, 79 S. Ct. 1171, 3 L. Ed. 2d 1250 and *Weer* v. *State* (1941), 219 Ind. 217, 37 N.E. 2d 357.

The appellant's argument seems to be that *if* at least one juror had read the article it would have caused a reasonable juror to conclude that the defendant was guilty as charged.

Therefore it was highly prejudicial to the defendant and the overruling of the motion for mistrial denied the appellant a fair and impartial trial under due process of law.

The appellant in his brief states:

"The defendant suggests to the court that the article was such that having been read by at least one juror, it is such that would cause a reasonable juror to conclude that the prosecutor's words were correct and that the defendant was guilty as charged."

The rule requires much more than a mere speculation that an article was read by a juror and of course the law also requires more than a mere speculation that a juror had read the article and was prejudiced thereby. We agree with the

appellee's position that if the appellant's contention were adhered to it would be impossible to convict any criminal whose trial was reported in the newspaper.

Even if appellant had shown that some member of the jury read the article, it is clear that the reading of a newspaper article pertaining to the case by a juror is not grounds for mistrial, new trial or reversal unless it is shown that the jurors were influenced thereby. *United States* v. *Mitchell*, 319 F. 2d 402, (7 Cir. 1963) ; *United States* v. *Carruthers*, 152 F. 2d 512, (7 Cir. 1946), cert denied 327 U. S. 787, 66 S. Ct. 805, 90 L. Ed. 1014. See also 31 A.L.R. 417.

The appellant attempts to draw an unnecessary distinction between the case at bar and the cases of *Weer* v. *State, supra,* and *Prophet* v. *State* (1960), 241 Ind. 57, 168 N. E. 2d 189 by saying that there was no showing in the *Weer* case, or in the *Prophet* case that the article was read by any member of the jury. But that is also the situation in the case at bar. Those cases are therefore controlling. We refuse to follow the appellant's contention that the silence of the jury members when they were asked whether they had read the article, was indicative of an affirmative answer to the question.

We therefore hold that the appellant has failed to demonstrate reversible error and the judgment of the trial court should be affirmed.

Judgment affirmed.

Jackson, C. J., concurs in result.

Arterburn, Lewis and Mote, JJ., concur.

NOTE.—Reported in 231 N. E. 2d 800.