**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SCOTT KNIERIM**
The Law Office of Scott Knierim, LLC
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES D. STUTZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A04-1205-CR-255 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephenie D. LeMay-Luken, Judge
Cause No. 32D05-1202-FD-137

**December 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

A jury convicted Appellant-Defendant Charles Stutz of Class D felony resisting law enforcement and Class D felony intimidation after he refused an Indiana State Trooper's instruction to step out of his vehicle, subsequently led the Trooper on a twenty-six-mile police chase, and later threatened to kill a Hendricks County Sherriff's Corporal. Stutz appeals his convictions, arguing that his right to a fair trial was violated when members of the jury twice observed him in the custody of law enforcement officers. We conclude that Stutz failed to demonstrate that a juror actually observed him while in custody or that he was prejudiced by such an observation. Stutz also challenges the admission of evidence that, prior to Stutz's charged conduct, two witnesses told the Trooper that Stutz had admitted to drinking alcohol and was behaving strangely. Concluding that this testimony was relevant to the issue of why the Trooper approached Stutz, and that its probative value was not substantially outweighed by any prejudice it may have caused, we affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of February 5, 2012, Mindy Reynolds was driving home from work with Kristin Harasty and a third woman. The motorists were traveling westbound on Interstate 70 from Indianapolis to Plainfield, and, as they exited the interstate via the ramp to Ronald Regan Parkway, one of the tires on Reynolds's vehicle "exploded." Tr. p. 154. Reynolds pulled to the side of the road and began considering her options. Only a few minutes later, Stutz, driving a tow truck, happened upon the motorists and offered to change the flat tire. Reynolds accepted his offer.

Indiana State Police Trooper Evan Joyner arrived on the scene just before Stutz

finished changing the tire. After first speaking with an Indiana Department of Transportation employee, who also had stopped to help, Trooper Joyner spoke to the motorists. Harasty and Reynolds told Trooper Joyner that Stutz had admitted to them that he had been drinking alcohol that evening and that he had been behaving strangely. Suspecting that Stutz had been driving under the influence of alcohol, Trooper Joyner approached Stutz, who by then was seated in the driver's seat of his tow truck, and asked for his identification. Trooper Joyner verified Stutz's identity and then asked Stutz to step out of his truck. Stutz asked why, and Trooper Joyner repeated his instruction to step out. When Stutz asked why a second time, Trooper Joyner retreated to the rear of the truck. At this time, Stutz "squealed the tires" and drove off. Tr. p. 218.

Trooper Joyner ran backed his patrol car, informed dispatch of Stutz's flight, and then followed Stutz with his car's emergency lights and siren activated. Stutz did not pull over. Instead, he led Trooper Joyner on a twenty-six-mile police chase through Hendricks County, during which Stutz traveled as fast as seventy-five miles per hour, drove in the lane of oncoming traffic, and failed to stop at numerous stop lights and stop signs. The chase ended in Plainfield, where Trooper Joyner and two Plainfield Police Officers were able to box in Stutz's tow truck and bring it to a stop.

Plainfield Police Officers extracted Stutz from his tow truck and forced him to the ground. Stutz resisted the officers' attempts to put him in handcuffs, but he eventually was subdued. Once in custody, Stutz was taken to the Hendricks County Jail, where he angrily commented to Trooper Joyner: "Next time [I'm] going to be armed." Tr. p. 234. Hendricks County Sherriff's Corporal Kris Allen then transported Stutz to a hospital to

receive medical treatment for a non-serious laceration on his brow. At the hospital, Stutz was "enraged" and said to Corporal Allen, "I'll kill that trooper," "And I'll kill you too." Tr. p. 311. Stutz also commented, "I was good in the police chase[, and if that ever happens again], 'I'll see how good I am in a gun battle.'" Tr. p. 346. Once back at the jail, Stutz stated several more times, "I'm going to kill that trooper." Tr. p. 312.

On February 7, 2012, the State charged Stutz with two counts of Class D felony resisting law enforcement and one count each of Class D felony intimidation, Class A misdemeanor resisting law enforcement, Class A misdemeanor criminal recklessness, Class A misdemeanor aggressive driving, Class B misdemeanor disorderly conduct, and Class B misdemeanor reckless driving. During proceedings on these charges, Stutz twice alleged that members of the jury had observed him in the custody of law enforcement, requesting a mistrial on each occasion. The first alleged sighting occurred during jury selection, when, Stutz claimed, he was seen wearing jail clothes and being escorted to the restroom by a Sheriff's Deputy. The second occurred during trial; Stutz claimed a juror saw him being placed into and removed from a police vehicle outside the courthouse. The trial court denied both of Stutz's mistrial motions.

Also during trial, Stutz repeatedly objected under Evid. R. 401 and 403 to the admission of evidence concerning what the motorists told Trooper Joyner prior to his approaching Stutz. Harasty testified that she told Trooper Joyner that Stutz was "acting like he was on something," "told us that he had been drinking," and "made weird, lewd comments and faces … to us." Tr. p. 180. The trial court sustained Stutz's objection "as to character" and instructed the jury not to consider the testimony about Stutz's

4

comments[1] in forming its conclusion. Tr. p. 181.

Harasty went on to testify that she told Trooper Joyner that Stutz "did something weird with his tongue," "raised his eyebrows up and down," and "made a weird … wide grin." Tr. p. 183. The trial court overruled Stutz's objection to these statements, admitting them for the purpose of establishing Trooper Joyner's motive for approaching Stutz. Harasty continued:

> [H]e told us not to be scared over and over again and not to call the police over and over again. He also said, "I'm sorry for getting so close to you; I've been drinking a lot of beer and eating a lot of food tonight. Don't be scared and don't call the cops. You shouldn't be afraid of me. This is my business. I have a legitimate business[;] you shouldn't be scared of me."

Tr. p. 184.

Reynolds similarly testified that she told Trooper Joyner that Stutz was "acting very erratic, talking to himself, sticking his face up to the passenger-side window … while he was changing the tire and that he told us … when he first pulled up that he had been … out drinking" because it was Super Bowl Sunday. Tr. p. 164. The trial court overruled Stutz's objection to this testimony as well.

The jury found Stutz guilty of one count each of Class D felony resisting law enforcement, Class D felony intimidation, and Class A misdemeanor criminal recklessness. The jury also determined Stutz to be a habitual offender. Ultimately, the trial court vacated Stutz's conviction for Class A misdemeanor criminal recklessness and sentenced Stutz to consecutive terms of three years each on the remaining two counts. Stutz's intimidation sentence was enhanced by four years because of his habitual offender

---

[1] The trial court later sustained Stutz's objection to a line of questioning regarding Stutz's inappropriate facial expressions.

status, giving him a total sentence of ten years of incarceration. This appeal follows.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Erred in Denying Stutz's Motions for a Mistrial

Stutz argues that his motions for a mistrial should have been granted based on his allegations that one or more jurors saw him in the custody of law enforcement. "The decision to grant or deny a mistrial lies within the discretion of the trial court." *Ortiz v. State*, 741 N.E.2d 1203, 1205 (Ind. 2001). "The trial court's determination will be reversed only when an abuse of discretion can be established." *Francis v. State*, 758 N.E.2d 528, 532 (Ind. 2001). "To prevail, the appellant must show that he was placed in a position of grave peril to which he should not have been subjected." *Id.* "The gravity of the peril is determined by the probable persuasive effect on the jury's decision." *West v. State*, 758 N.E.2d 54, 56 (Ind. 2001). "There must be more than mere speculation that the event in question happened and that the juror was prejudiced before a mistrial may be ordered." *Trotter v. State*, 838 N.E.2d 553, 558 (Ind. Ct. 2005) (citing *Harris v. State*, 231 N.E.2d 800, 807 (Ind. 1967)).

Here, Stutz presented no evidence that any juror saw him while in custody other than his general contentions that one did. As such, we can only speculate as to the identity of the particular juror, the degree of observation, and the likelihood of prejudice. We note, however, that "[a] juror's view of a defendant in a jail uniform in the custody of police does not necessarily prejudice the defendant's constitutional right to a fair trial." *Id.* "Jurors should not be surprised to see defendants in the custody of police while in the courthouse." *Id.* Because Stutz has not demonstrated that a juror observed him while in

6

custody or that any harm resulted from such a sighting, we cannot say the trial court abused its discretion in denying Stutz's motions for a mistrial.

**II.  Whether the Trial Court Erred in Admitting the Motorists' Testimony**

Stutz argues that the trial court erred in admitting Harasty's and Reynolds's testimony that they told Trooper Joyner that Stutz stated to them that he had been drinking alcohol that evening and that he was behaving strangely.  "The admission or exclusion of evidence is a matter left to the sound discretion of the trial court, and we will reverse only upon abuse of that discretion."  *Johnson v. State*, 671 N.E.2d 1203, 1205 (Ind. Ct. App. 1996).

Stutz claims that Harasty's and Reynolds's testimony is not relevant to Stutz's charged conduct of resisting law enforcement and intimidation, which occurred after the motorists spoke with Trooper Joyner.  We disagree.  "[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is considered relevant under Evid. R. 401.  "The trial court is accorded with wide latitude in ruling on the relevancy of evidence."  *Wallace v. State*, 486 N.E.2d 445, 446 (Ind. 1985).  Here, Harasty's and Reynolds's testimony is relevant to the issue of why Trooper Joyner approached Stutz after arriving on the scene.  Trooper Joyner testified that he approached Stutz because he believed Stutz might be driving under the influence of alcohol, and the motorists' testimony provides a basis for that belief.  The trial court did not abuse its discretion in admitting this evidence

7

Stutz also claims that the motorists' testimony places him in a bad light and is unfairly prejudicial. "Relevant evidence is admissible, Evid. R. 402, unless its probative value is substantially outweighed by the danger of unfair prejudice, Evid. R. 403." *Sanders v. State*, 704 N.E.2d 119, 124 (Ind. 1999). "The evaluation of whether the probative value of a particular item of evidence is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court." *Bostick v. State*, 773 N.E.2d 266, 271 (Ind. 2002). Here, we are not persuaded that Harasty's and Reynolds's testimony created a substantial risk of unfair prejudice, especially in light of Stutz's own testimony at trial. Stutz admitted that he disobeyed Trooper Joyner's instruction to step out of his tow truck and that he drove off instead. Stutz also admitted that he refused to pull over when Trooper Joyner pursued him and that he led officers on a lengthy police chase. Additionally, Stutz testified that he made statements to Corporal Allen about arming himself for future encounters with law enforcement, lending credence to Corporal Allen's testimony that Stutz made a threat on Corporal Allen's life. We cannot say that the admission of Harasty's and Reynolds's testimony was an abuse of discretion.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.