Roger CHRISTIAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9804–PC–379.

Court of Appeals of Indiana.

May 10, 1999.

---

Carolyn W. Rader, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Roger Christian appeals his convictions for rape, a class A felony, and criminal confinement, a class D felony. The sole issue raised is whether Christian was denied effective assistance of counsel. We reverse.

The relevant facts ·follow. In 1993, the State charged Christian with rape and criminal confinement. Christian's first and second attorneys withdrew from his case on October 18, 1993, and October 18, 1994, respectively. His third attorney, who ultimately represented Christian at trial, filed his appearance on October 18, 1994. This attorney also filed a waiver of jury trial on the same day. A bench trial was conducted and Christian was found guilty as charged. Thereafter, Christian filed a petition for post·conviction relief ("PCR") alleging ineffective assistance of counsel which was denied by the trial court. Additional facts will be provided as necessary for discussion.

■ A petitioner seeking post-conviction relief has the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Long v. State,* 679 N.E.2d 981, 983 (Ind.Ct.App.1997). The standard of review for a post-conviction hearing is similar to that of other trials where the trial judge hears the evidence and we review the trial court's ruling. *Long,* 679 N.E.2d at 983. The judge who presides over the post-conviction hearing has exclusive authority to weigh the evidence and determine the credibility of the witnesses. *Id.* We will not set aside the trial court's ruling on a post-conviction petition unless the evidence is without conflict and leads solely to a result different from that reached by the trial court. *Id.*

The issue raised in Christian's petition for post-conviction relief is whether he received ineffective assistance of counsel due to several alleged errors made by his trial counsel. However, because we find that one of the alleged errors· requires a reversal of Christian's convictions, we need not address the remaining errors he raises.

■ We evaluate claims concerning denial of the Sixth Amendment right to effective assistance of counsel using the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Coleman v. State,* 694 N.E.2d 269, 272 (Ind.1998). First, the appellant must show that his attorney's performance fell below an objective standard of reasonableness. *Coleman,* 694 N.E.2d at 272. Second, the appellant must show that the deficiencies in the attorney's performance were prejudicial to the defense. *Id.* Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable. *Id.* We presume that the attorney's performance has met the objective standard of reasonableness; to prevail, the appellant must rebut this presumption with strong and convincing evidence. *Barany v. State,* 658 N.E.2d 60, 65 (Ind.1995). Evidence of isolated poor strategy, inexperience or bad tactics will not support· a claim of ineffective assistance. *Clark v. State,* 668 N.E.2d 1206, 1211 (Ind.1996), *reh'g denied, cert. denied* 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).

Christian asserts that his trial counsel ("Counsel") ineffectively presented a defense to the rape charge by failing to present Christian's version of the facts and embracing the State's version of what transpired between Christian and S.W., the alleged victim. Indiana Code § 35–42–4–1 defines the crime of rape as follows:

" . . . a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force;

(2) the other person is unaware that the sexual intercourse is occurring; or

(3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;

commits rape, . . . "

Proof of sexual intercourse requires proof of the penetration of the female sex organ by the male sex organ. I.C. § 35–41–1–26. Thus, to convict Christian of rape, the State was required to produce evidence that penetration occurred.

During the hearing on the PCR petition, Counsel stated that the defense offered at trial was that S.W. had consented. However, in his opening statement at trial, Counsel had held open the option of defending on the basis that penetration was never achieved. Counsel stated that the defense would establish that "if, indeed, a sex·act occurred inside

[the apartment], it was totally consensual in all respects." Record, p. 194. At trial, Counsel called Christian as the only defense witness. During direct examination, Counsel questioned Christian about what transpired between him and S.W. The essence of Christian's testimony was that what occurred was consensual. However, Christian also testified regarding the alleged sexual act as follows:

"Q. [Counsel] Okay. There's been some indication that you all may have engaged in a sex act that evening. Did that occur?

A. [Christian] Almost, but not a sex act. Not—

Q. Tell us—

A. —not, you know, the act itself, but you know.

Q. Was there penetration?

A. No, there wasn't."

Record, p. 550. Christian again later testified:

"A. . . . So I was laying on top of her and at some point I wanted to penetrate her and she said no.

Q. She said no?

A. She told me no.

Q. Okay. And—

A. And so there was not no penetration.

Q. Is it your testimony then that once you heard no, you stopped?

A. Yes.

Q. Did you make any further attempts to penetrate her after that?

A. No, I didn't."

Record, pp. 555–556.

Despite Christian's direct assertions that the encounter stopped short of penetration, Counsel proceeded to concede during his closing argument that penetration had occurred. In his closing remarks, Counsel stated the following:

"In any event, the facts alleged by the State have to illuminate the following elements of the Criminal Code, specifically that on July 30, Mr. Christian knowingly had intercourse with [S.W.]. Well, there *seems to be little dispute about that,* because looking at the evidence most favor-able to the State and taking into consideration Mr. Christian's own testimony, *there was penetration;* the whole question though, is was that penetration accomplished against a member of the opposite sex when she was compelled, by deadly force or threat of deadly force?"

Record, p. 616 (emphasis added). Counsel then proceeded to later state: "But, we concede that in fact there was penetration ... " Record, p. 628. Christian asserts that Counsel made these concessions because he "either failed to hear his client deny raping the complainant. Or more likely ... was not sufficiently prepared to present the defense of factual innocence to the act of penetration and stepped over to a new defense of consent." Appellant's brief, p. 15.

We recognize that concession by an attorney to certain elements of a charge or even to an entire charged offense may at times constitute a reasonable trial strategy. For instance, concession to a particular fact or charge that is supported by overwhelming evidence may help enhance a defendant's credibility on the remaining issues at trial. *See Underwood v. Clark,* 939 F.2d 473, 474 (7th Cir.1991) (holding that acknowledgment by defense counsel at the end of trial that guilt on a particular count is evident given overwhelming evidence does not constitute ineffective assistance of counsel where such concession is made to gain a strategical advantage such as winning the confidence of the jury), *reh'g denied.*

Furthermore, in *Schick v. State,* this court held that the defendant's trial counsel was not ineffective during a prosecution for manslaughter, theft, and confinement where counsel successfully persuaded the jury that the defendant could be found guilty only of lesser included offenses of voluntary manslaughter and theft. *Schick v. State,* 570 N.E.2d 918, 926 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* In other words, we held that concession as to certain charges is appropriate where such concession provides some advantage in defending against other charges. In so holding, we cited the United States Supreme Court's decision in *U.S. v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80

L.Ed.2d 657 (1984). In *Cronic*, the Supreme Court held that " '[t]he right to the effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing" and that the adversary process is presumptively unreliable if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 2045, 2047. Based on *Cronic*, we held in *Schick* that because trial counsel did not concede guilt on all the charges and forced the State to prove its murder and robbery charges, he had adequately put the State's case to a meaningful adversarial test. *Schick,* 570 N.E.2d at 927.

In light of these cases, we conclude that, here, Counsel's concession as to the element of penetration did not put the State's charges to a meaningful adversarial test for several reasons. First, the evidence supporting the element of penetration was not overwhelming. In fact, the only supporting evidence presented was S.W.'s testimony that penetration occurred. The forensic evidence presented by the State indicated no trace of seminal fluid or sperm present in the samples collected from S.W. at the hospital. Although a foreign pubic hair was retrieved from a pubic combing of S.W., its presence is not inconsistent with Christian's testimony that he had stopped just prior to penetration. By conceding that penetration occurred, Counsel denied Christian the opportunity to have the trial court weigh S.W.'s assertion against his own with respect to that element. In cases such as this, where the determination of facts is often reduced to an issue of the credibility of the defendant vis-a-vis the alleged victim, we believe the defendant at least deserves to have his own statement weighed with the other evidence.

Furthermore, Counsel's concession regarding penetration directly undermined Christian's credibility as a witness on his own behalf. In effect, Counsel was suggesting to the trial court that he did not believe Christian and that Christian had lied on the witness stand when he stated that there had been no penetration. Although Counsel may have chosen to make this concession to bolster the defense of consent, the bulk of the

evidence that the act was consensual was provided by Christian's own testimony. Thus, by impeaching Christian's testimony on the issue of penetration, Counsel, in effect, also undermined the consent defense. As a result, all that was left of Christian's defense was an assertion of consent that had been significantly weakened by his own Counsel's effective impeachment of him. Therefore, we conclude that Counsel failed to put the State's charges to a meaningful adversarial test. *See Schick,* 570 N.E.2d at 927.

In conclusion, we hold that Counsel's performance resulted in a breakdown in the adversarial process that rendered the resulting convictions fundamentally unfair and unreliable. *See Coleman,* 694 N.E.2d at 272. The evidence of Counsel's performance is clear from the record and leads solely to a result different from that reached by the trial court. *See Taylor,* 699 N.E.2d at 272–273. Consequently, we reverse Christian's convictions for rape and confinement.

Reversed.

BAILEY, J., and NAJAM, J., concur.