**Demario L. BANKS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 82A05–0709–PC–520.

Court of Appeals of Indiana.

April 15, 2008.

Transfer Denied June 19, 2008.

John P. Brinson, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Petitioner, Demario L. Banks (Banks), appeals the post-conviction court's denial of his Petition for Post–Conviction Relief.

We affirm.

*ISSUES*

Banks presents two issues for our review:

(1) Whether he received ineffective assistance of trial counsel; and

(2) Whether he received ineffective assistance of appellate counsel.

*FACTS AND PROCEDURAL HISTORY*

Our supreme court stated the facts in Banks' direct appeal, *Banks v. State*, 761 N.E.2d 403, 404 (Ind.2002), as follows:

The facts most favorable to the verdict show that Banks and James Morris decided to rob known drug dealer McKnight. In the early morning hours of December 20, 1998, they went to McKnight's home and engaged him in a brief conversation. Suddenly producing a 9mm handgun, Banks told McKnight to lie on the floor and demanded to know where he kept his drugs and money. In the meantime, Morris proceeded to ransack the house finding a large quantity of cocaine and between five and eight thousand dollars in cash. While conducting his search, Morris heard a gun shot. Banks later told Morris that he had accidentally shot McKnight. The two removed jewelry from McKnight's body and fled the scene with jewelry, money, and drugs. A later autopsy revealed McKnight died as a result of a gunshot wound to the chest.

Banks was subsequently arrested and charged with murder, robbery, and felony murder. After a trial by jury, he was convicted as charged. The trial court did not enter a judgment of conviction on the murder and robbery convictions. Finding they merged into the conviction for felony murder, the trial court entered judgment and sentenced Banks on that conviction only to a term of sixty years.

On his direct appeal from the trial court's conviction, Banks first argued that the trial court had erred when it denied his motion for a new trial after a witness had referred to his "carjacking case" when testifying. *Id.* at 404. Our supreme court

concluded that Banks failed to explain why an admonishment from the trial court was not satisfactory to correct the error, and, therefore, Banks was not entitled to relief on that issue. *Id.* at 405. Banks also argued that the trial court had erred by not allowing him to introduce details about a witness' prior conviction of robbery. *Id.* Our supreme court determined that a witness who has been convicted of certain infamous crimes, or crimes of dishonesty, may be questioned only about whether he had been convicted of one or more of those crimes; therefore, the trial court did not err by refusing to let Banks question the witness about the details of those crimes. *Id.* Lastly, the trial court permitted the State to introduce testimony about the contents of letters that had been written by Banks over Banks' objection. *Id.* Banks argued on appeal that the testimony was inadmissible hearsay, but our supreme court found that it was a statement by a party opponent and therefore admissible at trial. *Id.* at 406. Accordingly, our supreme court affirmed the judgment of the trial court on January 24, 2002. *Id.*

On March 3, 2004, Banks filed his Petition for Post–Conviction Relief. On March 9, 2004, the State filed its answer. On August 28, 2006, Banks filed an Amended Petition for Post–Conviction Relief, and on August 28, 2006, the State filed its answer. On January 11, 2007, the post-conviction court heard evidence on Banks' petition, and, on April 27, 2007, the post-conviction court entered its opinion and judgment denying the petition.

Banks now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Post-conviction hearings do not afford defendants the opportunity for a "su-

per appeal." *Moffitt v. State,* 817 N.E.2d 239, 248 (Ind.Ct.App.2004). The petitioner has the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *see also id.* Because Banks is appealing from a negative judgment, to the extent his appeal turns on factual issues, he must provide evidence that as a whole unerringly and unmistakably leads us to believe there is no way within the law that a post-conviction court could have denied his post-conviction relief petition. *See Stevens v. State,* 770 N.E.2d 739, 745 (Ind.2002), *reh'g denied, cert. denied,* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. *Godby v. State,* 809 N.E.2d 480, 482 (Ind.Ct.App.2004), *trans. denied.*

To establish a violation of the right to effective counsel as guaranteed by the Sixth Amendment, petitioners typically must establish both prongs of the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied. Lee v. State,* 880 N.E.2d 1278, 1280 (Ind.Ct.App.2008). This is true for both claims of ineffective assistance of trial and appellate counsel. *Bieghler v. State,* 690 N.E.2d 188, 193 (Ind. 1997). The defendant must prove (1) his or her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Johnson v. State,* 832 N.E.2d 985, 996 (Ind.Ct.App. 2005), *reh'g denied, trans. denied* (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Essentially, the defendant must show that counsel was deficient in his or

her performance and the deficiency resulted in prejudice. *Johnson*, 832 N.E.2d at 1006. Because all criminal defense attorneys will not agree on the most effective way to represent a client, "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Bieghler*, 690 N.E.2d at 199. Thus, there is a strong presumption that counsel rendered adequate assistance and used professional judgment. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind.2001). If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

Where the defendant's counsel fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). When this happens, no specific showing of prejudice is required. *Id.*

> As a general matter, only a few circumstances give rise to a *per se* violation of the Sixth Amendment right to counsel: no counsel present at all, or counsel not present at critical stages; complete failure to cross-examine or subject the opposing case to the adversarial process; an actual conflict of interest; and failure to file a requested appeal. The Supreme Court has described these as circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.

*Little v. State*, 819 N.E.2d 496, 502 (Ind. Ct.App.2004) (quoting *United States v. Maria–Martinez*, 143 F.3d 914, 917 (5th Cir.1998)).

## II. *Ineffectiveness of Trial Counsel*

Banks argues that his trial counsel completely failed to subject the State's case to adversarial testing, a *per se* violation of his federal Sixth Amendment right to counsel. Specifically, Banks argues that his trial counsel was presumptively ineffective because he: (1) failed to raise any valid defense; (2) admitted that the petitioner had committed all of the elements of felony murder during his opening statement and closing arguments; (3) permitted and recommended to Banks that he testify, knowing that Banks would admit to the offense of felony murder; and (4) disclosed to the State the existence and name of a witness against Banks who was unknown to the State.

### A. *Trial Counsel's Admissions*

Banks alleges that his trial counsel "admitted that the petitioner knowingly committed all the elements of felony murder, murder and robbery during opening statement ... [and] closing argument." (Appellant's Br. p. 9, 10).

First, we disagree with Banks' characterization of the record. Banks does not direct our attention to any specific statements during Banks' closing argument where his trial counsel made admissions, and upon review of the closing argument, we fail to find where Banks' trial attorney admitted Banks was guilty of any crime. Rather, during closing argument, Banks' trial counsel painstakingly pointed out where witnesses had contradicted themselves and where testimony was inconsistent from witness to witness. Further, Banks' trial counsel pointed out inconsistencies between the State's opening statement, closing arguments, and its witnesses' testimony. Since we do not find any admissions of guilt by Banks' trial counsel during closing argument, we cannot say that his trial counsel provided ineffective assistance by making any such admission.

■ Further, Banks' allegation that his trial counsel "admitted" all the elements of felony murder during opening statement is unsupported by the record. His attorney began by saying, "we're not conceding anything, but a lot of what you're going to hear is not going to be disputed." (Trial Transcript p. 75). He then proceeded to explain what he believed witnesses would testify to and the crime scene investigation would show: Banks went to the victim's house with a plan to steal, Morris shot and killed the victim, and Banks took things from the victim's house. Trial counsel then stated that "we know [Banks] is guilty of something, I'm not asking you to let him walk home. He knows that, but he's not guilty of [m]urder, and he's not guilty of [f]elony [m]urder, and he's not guilty of Robbery causing a murder." (Trial Tr. p. 86). Banks' trial counsel then introduced to the jury that Banks may have committed a theft, rather than a robbery, on the day of the incident. In this context, we do not view Banks' trial counsel's statements as an admission of robbery or felony murder. To the contrary, the opening statement was an acknowledgement of likely testimony and an attempt to persuade the jury to find that Banks was guilty of a lesser offense.

Banks' misplaced assertion that his trial counsel admitted to the jury Banks' commission of robbery is key to our analysis. From this faulty premise, Banks argues that his trial counsel violated his right to challenge the State's charge of robbery and felony murder, because if Banks intended to commit robbery and his co-perpetrator shot and killed someone during that robbery, Banks would be guilty of felony murder under Indiana law. See *Exum v. State,* 812 N.E.2d 204, 207–208 (Ind.Ct.App.2004), *trans. denied* (holding that defendant was guilty of felony murder where he intended to commit robbery, although he was unarmed, and it was the victim of the robbery who fired the shot that killed another person). However, theft is not a crime that supports a conviction of felony murder. I.C. § 35–42–1–1(2).[1]

### a. Deficient Performance

■ Nevertheless, we address whether Banks' counsel was ineffective for admitting during opening statement that Banks was guilty of theft. In *United States v. Holman,* 314 F.3d 837 (7thCir.2002), our federal district court of appeals rejected a claim of ineffective assistance of trial counsel based on the fact that the trial counsel had acknowledged that the defendant was guilty of one of multiple charged counts during opening statement.[2] The *Holman* court stated that conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy, which does not rise to the level of deficient performance. *Id.* at 840. Similarly, we have recognized that "concession to a particular fact or charge that is supported by overwhelming evidence may help enhance a

---

1. Indiana Code section 35–42–1–1 provides, in pertinent part:

 A person who:

 . . .

 (2) kills another human being while committing or attempting to commit arson, burglary, child molesting, consumer product tampering, criminal deviate conduct, kidnapping, rape, robbery, human trafficking, promotion of human trafficking, sexual trafficking of a minor, or carjacking . . .

commits murder, a felony.

2. Banks incorrectly asserts that the trial counsel in *Holman* conceded Holman's guilt to a "lesser included offense." (Appellant's Br. p. 11). To the contrary, Holman's counsel conceded Holman's guilt to Count I, and then challenged the Prosecution's evidence as to Counts II through IV of the Indictment. *Holman,* 314 F.3d at 840.

defendant's credibility on the remaining issues at trial." *Christian v. State,* 712 N.E.2d 4, 6 (Ind.Ct.App.1999). However, the *Holman* court explained that there was no indication that Holman's counsel had his client's consent to pursue such a strategy. *Holman,* 314 F.3d at 841. Relying on *Strickland,* which imposes a requirement upon counsel "to consult with the defendant on important decisions," and its acknowledgement of the important "constitutional rights implicated when guilt is conceded," the *Holman* court concluded that such a concession without any indication of the client's consent to the strategy is deficient performance under *Strickland. Id.* at 841, 844.

During the post-conviction hearing, Banks' post-conviction counsel established that the same deficiency the *Holman* court found had occurred here during the following colloquy with Banks:

> Q: Did [your trial counsel] tell you before he gave his opening statement that he was going to tell the jury that you knowingly participated in the robbery?
>
> A: No he didn't.
>
> Q: Did he ask for your consent to allow him to present that as a defense?
>
> A: No.

(Post–Conviction Tr. p. 64). Although this colloquy erroneously maintains that Banks' trial counsel told the jury that Banks participated in a robbery, we will assume for purpose of our analysis that Banks' trial counsel did not inform Banks of his intention to concede that Banks was guilty of theft. In light of *Strickland's* requirement that counsel consult with defendants on important strategic decisions, we conclude that Banks' trial counsel's failure to consult with Banks regarding the admission to the crime of theft constitutes deficient performance. *See id.* at 841.

b. *Prejudice*

■ The *Holman* court stated that in a scenario where defense counsel has conceded guilt to one charge, but subjected other aspects of the State's case to adversarial testing, *Strickland* is the appropriate test, not *Cronic* and its presumption of prejudice. *Id.* at 840 n. 1 (quoting *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) ("when we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete.")). Banks relies upon his interpretation of the record that his counsel admitted his guilt to robbery and felony murder to develop his argument that his trial counsel completely failed to subject the State's case to adversarial testing, and that prejudice should be presumed pursuant to *Cronic.* However, as we have explained, we disagree with Banks' interpretation. Banks' attorney conceded his guilt to theft, and theft only, during opening statements. Therefore, *Strickland* applies, and Banks must prove prejudice. However, Banks was not convicted of theft, and as such, it would be extremely difficult to prove prejudice from that concession.

■ Moreover, Banks presents no alternative strategy that could have changed the outcome of the trial. As for alternate strategies, he states: "If the case is hopeless, plead guilty and ask for mercy from the judge. If a case must be tried, and the case is hopeless, then cross-examine the State's witnesses, probe for weaknesses, and develop issues for appeal." (Appellant's Br. p. 15). Since both of these alternatives would result in the conviction of Banks, we conclude these suggestions do not carry Banks' burden to prove there was a reasonable probability that, but for counsel's deficient performance, the result

of the proceeding would have been different. *Johnson,* 832 N.E.2d at 1006.

### B. *Recommending that Banks Testify*

█ Banks also argues that his trial counsel was ineffective for advising him to testify during the trial "knowing in advance that he would admit to planning and taking part in a robbery which resulted in the victim's death." (Appellant's Br. p. 17). Our review of the record persuades us that Banks' trial counsel's advice that Banks testify was in response to certain damaging evidence which had developed during the trial. Prior to when Banks took the witness stand, the State had presented an eyewitness who testified that Banks had shot and killed the victim. During a colloquy outside of the presence of the jury, Banks made clear that his attorney had advised him to testify because of the way the trial had gone.

One of Banks' defense theories was that he had intended to participate in a theft, not a robbery. The crime of robbery requires, in pertinent part, the use or the threatening of use of force, or the placing of someone in fear. I.C. § 35–42–4–9. Theft, on the other hand, requires the knowing or intentional exertion of unauthorized control over the property of another. I.C. § 35–43–4–2. Banks testified that Morris had explained to him the plan to steal from the victim prior to going to the victim's house. According to Banks, Morris and Banks were going to smoke some marijuana with the victim, Morris would then somehow get the victim's gun away from him, and then they would take his property and leave. Morris knew the victim, but Banks did not. Banks stated that he had told Morris that they "don't need no guns." (Trial Tr. p. 745). According to Banks, Morris accomplished the task of taking the victim's gun by asking him if he could look at it. Banks went

outside to make sure no one else showed up. He then heard a shot and went inside to discover that Morris had shot the victim. Morris aimed the gun at Banks and told him to go around and collect anything of value that they could take. After Banks had collected some property, Morris shot the victim again, and Banks ran out of the house with Morris behind him. Morris threatened to shoot Banks if he did not stop running.

While Banks may be correct in arguing that the jury could have concluded from Banks' own testimony that he was guilty as an accomplice to robbery, and in turn felony murder, his testimony was the only evidence from which the jury could have concluded that Banks intended to participate in a theft rather than a robbery. In light of the evidence that Banks had shot and killed the victim himself, and the total lack of any other evidence that Banks did not intend to use force when taking the victim's possessions, we cannot say that it was poor judgment for Banks' counsel to advise him to testify, let alone a mistake that overcomes the strong presumption that counsel rendered adequate assistance and used professional judgment. *See Timberlake,* 753 N.E.2d at 603.

### C. *Disclosure of a Witness*

█ Banks also alleges that his trial counsel was ineffective for disclosing the existence of a witness, Brian Fentress (Fentress), to the State. During the postconviction hearing, Banks' trial counsel testified that he gave this information to the State because the defense had previously intended to use Fentress as a witness.

At trial, when called by the State, Fentress testified that Morris and Banks came to his home the day of the murder. They explained to him that the victim was not going to be home and that they were going to go there to steal the victim's money and

drugs. He testified that Morris was the one with the plan and in charge, and that Morris gave Banks a gun, but kept the only gun with bullets. They talked Fentress into joining them on the heist. Fentress further testified that they drove to the victim's house together. On the way they picked up Morris' cousin who they saw walking down the street. When they got to the victim's house, Morris' cousin knocked on the door to see if anyone was home. The victim answered, and after a brief conversation, Morris' cousin came back to the car. He told the others that the victim was home. Morris tried to talk the others into going into the house regardless of the fact that the victim was home, calling them "bitches" and "whores" if they wouldn't go in. (Trial Tr. p. 154). Fentress said he demanded to be taken home, because he wasn't going to go in to steal when the victim was home, and that Banks agreed. They drove around and eventually dropped Fentress off at his house. The next day Fentress saw on the news that the victim had been shot and killed. Thereafter, Banks told Fentress that he did not go back to the victim's house that night. Fentress testified that Banks was his friend, and that he believed Banks when he said he did not go back to the victim's house the night of the murder.

From our review of Fentress' testimony, especially when given in context of the other evidence by the State, we cannot say that it was a mistake or poor judgment for Banks' trial attorney to consider calling Fentress as a witness. Banks' trial attorney testified that he was required to divulge the information about Fentress to the State because he planned to call Fentress as a witness, and Banks has presented no evidence to the contrary. Therefore, we conclude that Banks has not met his burden of proving that his trial attorney provided deficient performance by divulging information about Fentress to the State.

### III. *Ineffective Assistance of Appellate Counsel*

 The sole reason Banks alleges his appellate counsel was ineffective is because his appellate counsel failed to argue that Banks' rights were violated when the trial court permitted the jury to review certain evidence during deliberations without Banks being present. In *James v. State,* 613 N.E.2d 15, 24 (Ind.1993), James contended that his right to be present at trial was violated when the trial court allowed the jury to review videotape and other exhibits with only the bailiff present. The trial court granted the State's request that various exhibits be published at the close of its case-in-chief and then arranged for the jury to view the exhibits in a closed courtroom during lunch hour. *Id.* During the review, one or more jurors requested that a videotape of evidence be replayed because some jurors had not been at a vantage point during the State's case-in-chief to see the videotape well. Over James' objection, the trial court allowed the jury to review the videotape with only the bailiff present. *Id.* Our supreme court acknowledged in *James* that "both the Sixth Amendment to the United States Constitution and Article 1 Section 13 of the Indiana Constitution guarantee the right of an accused to be present in the courtroom at every stage of the proceedings requiring the presence of the jury." *Id.* (citing *Dodson v. State,* 502 N.E.2d 1333, 1337 (Ind.1987); *Miles v. State,* 222 Ind. 312, 53 N.E.2d 779, 781 (1944)). However, *James* is not applicable here because *James* addressed a claim of error by allowing the jury to review evidence outside of the presence of a defendant *during the trial.* Here, Banks' complaint involves the review of evidence by the jury during deliberations, not during the trial. Banks has not presented us with any authority

showing that he has a right to be present when the jury reviews evidence during deliberations. Therefore, we conclude that Banks' appellate counsel could not have provided ineffective assistance of counsel by failing to argue that Banks' rights had been violated when he was not permitted to be present when the jury reviewed the tape during deliberations.

## CONCLUSION

For the forgoing reasons, we conclude that the post-conviction court did not err when it found that Banks had not received ineffective assistance of trial or appellate counsel, and denied Banks' Petition for Post–Conviction Relief.

Affirmed.

KIRSCH, and MAY, JJ., concur.