Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JONATHAN O. CHENOWETH**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LEROY HALL,                          )
                                     )
    Appellant-Petitioner,        )
                                     )
      vs.                     )     No. 49A04-1202-PC-68
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Respondent.         )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0607-PC-125775

**August 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

The Marion Superior Court denied a petition for post-conviction relief filed by Leroy Hall ("Hall"). Hall appeals and claims that the post-conviction court erred in concluding that Hall was not denied the assistance of counsel and the effective assistance of counsel.

We affirm.

**Facts and Procedural History**

The facts underlying Hall's convictions were set forth by this court in Hall's direct appeal as follows:

> In January 2006, Hall began a romantic relationship with K.H. and the two agreed to marry. On June 16, 2006, K.H. told Hall that she needed time to think and to evaluate their relationship. The following day, K.H.'s children asked to see Hall for Father's Day, so Hall, K.H., and her four children went to dinner together. K.H. then drove Hall home. K.H. again told Hall that she needed time to think, but Hall pleaded with her to continue the relationship.

> Over the next three days, Hall called K.H. repeatedly at work and home. On June 21, 2006, K.H. went to a friend's house after work in order to avoid Hall. She returned to her sister's home, where she and her children were staying, around 1:30 a.m. and discovered Hall on the couch. Hall immediately began questioning K.H. about where she had been. As K.H. got herself ready for bed, Hall continued pleading with her to continue their relationship. K.H. sat on a loveseat while Hall sat on the couch. Hall then got on his knees, approached K.H. on the loveseat, and then pulled her to the floor. K.H. was unable to get to away from Hall who forced her legs above her head, told her not to yell or scream, and raped her. The next morning as K.H. got in her car to go to work, Hall apologized to her.

> K.H. worked both her jobs that day and returned to her friend's house. She arrived at her sister's home around 5:00 a.m. the next morning and found Hall asleep on the living room floor. In an effort to avoid a confrontation with Hall, K.H. went upstairs to her bedroom to sleep. She awoke a short time later to find a naked Hall on her bed. Hall flipped K.H. onto her back and attempted to force intercourse with her. K.H. told Hall no and struggled to free herself. Hall then squeezed K.H.'s neck and told her to "shut up" and "be quiet." K.H. gasped for air as she told Hall that she

2

would call the police. Hall replied, "I don't care, I've been in jail before." K.H.'s sister knocked on her bedroom door in order to wake her for work. This distracted Hall so that K.H. was able to get up.

K.H. left for work with her sister and called police to make sure that Hall had left the home. K.H. sought a protective order which was issued the following Monday. Hall continued to call K.H. both at home and work. K.H. asked her employer to follow her home in case Hall was there waiting at her. As K.H. went to unlock her car, she saw Hall "ducked down" in the back seat. K.H. immediately got into her employer's car and called police from her employer's cell phone. Hall approached the car, but left before the police arrived.

After finding a safe place for her children to stay, K.H. returned to her own home with a male relative and immediately noticed that things were not as she had left them. She stepped outside into the yard and called Hall's name. Hall then came out of the house and backed K.H. up against the side of the house. Hall put his hand around K.H.'s neck, told her that he was going to have her, that he was going to kill her if they were not together, and that she needed to say goodbye to her children. After K.H.'s relative intervened, Hall picked up two fallen tree limbs and threw one of them at K.H. Hall was later apprehended by police and found in possession on K.H.'s driver's license and cell phone.

Hall v. State, No. 49A02-0611-CR-983, slip op. at 2-4 (Ind. Ct. App. Nov. 27, 2007) ("Hall I") (record citations omitted).

Hall was subsequently charged with two counts of Class B felony rape, three counts of Class D felony criminal confinement, two counts of Class D felony intimidation, and three counts of Class A misdemeanor criminal mischief. The State later amended the charging information to include counts of Class B felony attempted rape and Class A misdemeanor criminal mischief, and again later amended the information to include an allegation that Hall was an habitual offender.

A jury trial commenced on September 25, 2006. Hall was represented by Daniel Mohler, a public defender who had been practicing law since 1965 and who had

represented clients accused of sexual offenses in approximately 100 cases. At trial, Mr. Mohler's opening statement emphasized that K.H. did not initially report either rape to anyone, that there was no evidence corroborating her testimony, and that her version of events was contrary to common sense because she claimed to have been raped in a house occupied by several other people who heard nothing.

Mr. Mohler also cross-examined K.H. and elicited from her the fact that she and Hall had had a sixth-month romantic relationship which included sexual intercourse, that the couple had even been engaged to be married, and that Hall had previously never done anything to harm her. Mr. Mohler was also able to elicit from K.H. that, after the first sexual assault, she did not report the crime to anyone, including her sister, who worked as a medical assistant and lived in the same apartment as K.H. Mr. Mohler's questioning further caused K.H. to admit that she was initially unsure if what had happened to her was, in fact, rape; that she suffered no injuries; that, during the second incident, she found Hall asleep on the floor, yet did not call the police or alert anyone and instead went upstairs and got in her bed without any clothing; and that even after the second incident in which Hall attempted to rape her, she still did not report the crimes to the police even though she did report to the police that Hall had violated the no-contact order.

Hall had prior convictions for rape, sexual battery, battery, theft, and receiving stolen property, and did not testify on his own behalf at trial. During his closing statement, Mr. Mohler argued to the jury that it was unclear when Hall and K.H. had ended their relationship; that a reasonable person in K.H.'s situation would not have behaved as she did had she been raped; that K.H.'s testimony indicated that she started

4

having sexual intercourse with Hall before she told him "no"; that there was no corroborating physical evidence indicating that K.H. had been raped; that the other occupants of the house heard nothing; that K.H. went to bed after the rape without reporting it to anyone; that when Hall got into bed with her and attempted to have intercourse with K.H., she did not cry out or seek help; and that even though K.H. reported to the police that her cell phone and driver's license had been stolen by Hall, she did not report that Hall had raped her.

Mr. Mohler also argued to the jury that K.H.'s story did not make sense because "she wasn't raped because she had consensual sex with [Hall] again." Tr. p. 395. He later argued to the jury that "the evidence shows that Leroy Hall and [K.H.] had agreed-upon sex the morning of June 22nd." Id. at 396. He also told the jury that Hall did not have to prove "that this was consensual," emphasizing the State's burden of proof. Id.; see also id. at 400 ("Leroy Hall does not have to prove beyond a reasonable doubt that this was consensual sex."). Mr. Mohler further stated to the jury, "if there's reasonable doubt as to whether it was consensual sex, then obviously [the State] haven't established the battery that goes along with th[e] alleged rape." Id. at 404.

While the jury deliberated, Hall agreed to plead guilty to the habitual offender enhancement in exchange for the habitual offender enhancement being capped at two times the advisory sentence for the highest felony for which he might be found guilty. The jury acquitted Hall of one count of rape and one count of intimidation, but found him guilty on the remaining charges. The trial court then sentenced Hall to an aggregate sentence of sixty-two years.

5

On direct appeal, Hall claimed that the State improperly amended the charging information to include the habitual offender allegation, that the trial court imposed an improper sentence on the habitual offender enhancement, and that his aggregate sentence was inappropriate. Hall I, slip op. at 2. We held that the State's amendment of the charging information to include the habitual offender allegation was proper. Id. at 5-6. However, we agreed with Hall and the State that the habitual offender enhancement imposed by the trial court exceeded that permitted by the terms of his plea agreement. Id. at 6. We therefore remanded the case to the trial court with instructions to impose a twenty-five year habitual offender enhancement, reducing Hall's aggregate sentence to fifty-two years. Id. Lastly, we held that Hall's aggregate fifty-two year sentence was not inappropriate in light of the nature of the offense and the character of the offender. Id.

Hall then filed a *pro se* petition for post-conviction relief on October 22, 2008, which was amended by counsel on May 18, 2010. The post-conviction court held hearings on Hall's petitions on June 8, 2010, and August 3, 2010. The post-conviction court entered findings of fact and conclusions of law denying Hall's petition on December 16, 2010. On appeal from this denial, we concluded that the post-conviction court had imposed upon Hall an improper burden of proof of clear and convincing evidence instead of the burden set forth in the post-conviction rules, i.e. that of a preponderance of the evidence. See Hall v. State, No. 49A02-1101-PC-65, slip op. at 3 (Ind. Ct. App. Aug. 8, 2011) ("Hall II"). We therefore reversed and remanded "for a hearing and decision consistent with the Indiana Rules of Post-Conviction Relief." Id. at 3.

On remand, Hall requested that the post-conviction court not hold a new post-conviction hearing, but instead simply issue findings of facts and conclusions of law applying the appropriate burden of proof. The trial court agreed and issued new findings and conclusions on January 18, 2007. But the trial court's new findings and conclusions still denied Hall's request for post-conviction relief. It is from this denial that Hall now appeals.

## Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App.

7

2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

## I. Assistance of Counsel

Hall claims that his trial counsel presented a defense, i.e. that Hall and K.H. had consensual sex, without Hall's authorization. Hall claims that this effectively deprived him assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.[1] Hall notes that the Sixth Amendment right to counsel encompasses a right to counsel of one's choice, Latta v. State, 743 N.E.2d 1121, 1127 (Ind. 2001) (citing Powell v. Alabama, 287 U.S. 45, 53 (1932)), and also the right to forgo counsel and proceed *pro se*. Stroud v. State, 809 N.E.2d 274, 279 (Ind. 2004) (citing Faretta v. California, 422 U.S. 806, 821 (1975)). Hall insists that counsel who advances a defense which was unauthorized by the client is effectively the same as counsel being forced upon a defendant wishing to represent himself.[2]

---

[1] The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI.

[2] The reason Hall frames his argument as a "per se" violation of the Sixth Amendment, as opposed to a claim of ineffective assistance of counsel, is that there is no requirement that he show prejudice if he was wholly denied the assistance of counsel. See United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006) (noting that where defendant is deprived of counsel of choice, "[n]o additional showing of prejudice is required to make the violation 'complete.'").

Hall has waived this claim. At no point in his initial petition for post-conviction relief or in his remanded petition did Hall present such an argument. To the contrary, his post-conviction petition repeatedly claimed that his trial counsel presented an unauthorized defense of consensual sex which resulted in him being deprived of the *effective* assistance of trial counsel—not that he was deprived of counsel at all or the counsel of his choice.[3] See P.C. App. 1 pp. 34, 52-53. It is well settled that "[i]ssues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." Allen v. State, 749 N.E.2d 1158, 1171 (Ind. 2001) (citing Ind. Post-Conviction Rule 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition.")). Because Hall did not present this issue in his petition for post-conviction relief, it is waived for purposes of appeal.[4]

---

[3] Hall's amended post-conviction petition did reference an ineffective assistance claim where prejudice is presumed. This claim is discussed infra.

[4] Waiver notwithstanding, the cases cited by Hall in support of his claim that the presentation of an unauthorized defense is equivalent to deprivation of the counsel of choice are readily distinguishable. In the cases cited by Hall, the defendants' attorneys conceded their clients' *guilt* without authorization of their clients to do so. See Florida v. Nixon, 543 U.S. 175, 181 (2004) (trial counsel, without express consent of defendant, conceded guilt in a capital case in order to bolster his plea for lenience at sentencing); Cooke v. State, 977 A.2d 803, 842-43 (Del. 2009) (contrary to defendant's wishes to plead not guilty, defense attorneys admitted to jury that defendant was guilty to advance the claim that he was guilty but mentally ill); State v. Carter, 14 P.3d 1138, 1148 (Kan. 2000) (trial counsel, over his client's objection, argued that defendant was guilty of lesser offense of felony murder to bolster defense against more serious charge of premeditated murder); Jones v. State, 877 P.2d 1052, 1056 (Nev. 1994) (trial counsel, without his client's approval, and contrary to defendant's testimony, admitted that defendant was guilty of second-degree murder in an attempt to avoid conviction on capital offense of first-degree murder); Jacobs v. Commonwealth, 870 S.W.2d 412, 417-18 (Ky. 1994) (contrary to defendant's maintenance of his factual innocence, defense counsel put forth an insanity defense); State v. Anaya, 592 A.2d 1142, 1143 (N.H. 1991) (trial counsel, without defendant's approval and contrary to his testimony that he was completely innocent, argued to jury that defendant was guilty of accomplice to second degree murder instead of first degree murder). Here, however, Hall's trial counsel did not admit or concede that Hall was guilty of any crime; he instead simply argued that what occurred between Hall and K.H. was legal, consensual sexual activity.

## II. Effective Assistance of Counsel

Hall also argues that he was deprived of the effective assistance of trial counsel. Hall's argument is again based on his claim that he did not authorize his trial counsel to argue to the jury that Hall had consensual sexual relations with the victim. Hall insists that he instead told his counsel to argue that he did not have *any* sexual contact with the victim after she ended their relationship.

### A. *Presumption of Prejudice*

Hall argues that his claim of ineffective assistance of trial counsel should not be analyzed under the two-prong test of Strickland v. Washington, 466 U.S. 668 (1984). Hall argues instead that his trial counsel's conduct constitutes a circumstance that is "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified" and prejudice may therefore be presumed. United States v. Cronic, 466 U.S. 648, 658 (1984). The Court in Cronic explained that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." Id. at 659.

Hall cites several of the same cases listed in footnote 1 above for the proposition that trial counsel's presentation of an unauthorized defense constitutes a Cronic violation. See Cooke v. State, 977 A.2d 803, 850 (Del. 2009); State v. Carter, 14 P.3d 1138, 1148 (Kan. 2000); Jones v. State, 877 P.2d 1052, 1057 (Nev. 1994); State v. Anaya, 592 A.2d 1142, 1143 (N.H. 1991). But all of these cases involved counsel conceding *guilt*, which did not happen here.

Hall also cites Christian v. State, 712 N.E.2d 4 (Ind. Ct. App. 1999) in support of his argument that trial counsel's presentation of an unauthorized defense is presumptively prejudicial. However, Christian is distinguishable from the present case. In Christian, the defendant was accused of rape. Although trial counsel argued that the victim consented, he also argued during opening statements that the defendant never penetrated the victim's sex organ. Id. at 5-6. The defendant's testimony also indicated that the victim had consented, but he also directly testified that no penetration occurred. Id. at 6. Despite his client's testimony that no penetration occurred, trial counsel repeatedly stated during closing argument that penetration *had* occurred. Id. Counsel even indicated that the defendant's testimony established that penetration had occurred, when the exact opposite was true. Id. The Christian court recognized that "concession by an attorney to certain elements of a charge or even to an entire charged offense may at times constitute a reasonable trial strategy." Id. But the court concluded that "[c]ounsel's concession as to the element of penetration did not put the State's charges to a meaningful adversarial test[,]" and that the Cronic presumption of prejudice was applicable Id. at 7. The Christian court noted that the evidence of penetration was not overwhelming, and by conceding that penetration occurred, counsel denied the defendant the chance to have his testimony weighed against that of the victim. Id. Further, the concession undermined the defendant's credibility as a witness on his own behalf. As the Christian court stated, "[c]ounsel was suggesting to the trial court that he did not believe Christian and that Christian had lied on the witness stand when he stated that there had been no penetration."

11

Id. Thus, by effectively impeaching his own client's testimony, counsel had undermined the consent defense he sought to present. Id.

In contrast, Hall did not testify at trial. Thus, Mr. Mohler's argument that any sexual activity between Hall and the victim was consensual did not undermine the consent defense or impeach Hall as a witness.

More importantly, as noted by the State, since Christian was decided, the United States Supreme Court has explained that for the Cronic presumption of prejudice to be applicable, counsel's failure to test the prosecution's case "must be *complete*." Bell v. Cone, 535 U.S. 685, 697 (2002) (emphasis added) (citing Cronic, 466 U.S. at 659) (noting that presumption of prejudice will apply only "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.") (emphasis added). As the Seventh Circuit Court of Appeals noted in United States v. Holman, 314 F.3d 837, 839 n.1 (7th Cir. 2002), "Cronic only applies if counsel fails to contest *any* portion of the prosecution's case; if counsel mounts a partial defense, Strickland is the more appropriate test." Here, Mr. Mohler clearly did not fail to contest *any* portion of the prosecution's case.

Indeed, since Bell, our court has concluded that Cronic's presumption of prejudice is inapplicable where trial counsel failed to consult with his client before conceding his client's guilt to theft while defending against the more serious offenses of robbery and felony murder. See Banks v. State, 884 N.E.2d 362, 368 (Ind. Ct. App. 2008) (citing Holman, 314 F.3d at 839-40 (concluding that two-part Strickland analysis, not Cronic's presumption of prejudice applied where trial counsel, without client's approval,

12

acknowledged that his client was guilty of one of numerous charges to bolster his case for innocence on the remaining charges)). Thus, Hall's claim that trial counsel admitted Hall's guilt is not subject to a presumption of prejudice under Cronic but is instead subject to the two-part Strickland analysis. See Banks, 884 N.E.2d at 368; Holman, 314 F.3d at 839-40; see also Bell, 535 U.S. at 697-98 (stating that challenges to specific portions of trial counsel's representation during a proceeding are "of the same ilk as other specific attorney errors which we have held subject to Strickland's performance and prejudice components"). We therefore address Hall's claims under a Strickland analysis.

B. *Strickland*

Our supreme court summarized the Strickland test for claims of ineffective assistance of trial counsel in Timberlake v. State, wherein the court wrote:

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an

13

ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted). Thus, the question before us is whether the post-conviction court clearly erred in concluding that Hall's trial counsel's performance was not deficient and/or that Hall was not prejudiced by any deficiency in the performance of his trial counsel. Deficient performance alone is not enough under Strickland, a deficient performance by trial counsel must also prejudice the defendant. Because we find that Hall's counsel's performance was not deficient, we need not consider whether Hall was prejudiced by it.

Hall claims that his trial counsel's performance was deficient because, Hall alleges, Mr. Mohler did not have his permission or authorization to claim that Hall's sexual activity with the victim was consensual. Hall's entire argument is premised upon his claim that his trial counsel presented the defense of consent without Hall's approval or authorization. It was Hall's burden in a post-conviction proceeding to prove that his counsel proceeded with this defense without Hall's consent. From the post-conviction court's findings, it is apparent that Hall failed to meet this burden.

Importantly, the post-conviction court gave no credit to Hall's testimony that he never authorized the consent defense, specifically finding that "[Hall]'s testimony at the evidentiary hearings was equivocal, self-serving and unbelievable." Appellant's App. 2, p. 46. The post-conviction court noted that Hall initially testified that he met with Mr. Mohler only once, that the sole topic of their discussion was a plea agreement, and that the topic of consensual sexual activity was not discussed. Hall later claimed, however,

14

that he told Mr. Mohler that he did not have any sexual relations with the victim after she ended the relationship. Hall's arguments that the trial court's findings in this regard are improper or incomplete are simply an invitation that we reweigh the evidence, which we will not do on appeal. See Graham, 941 N.E.2d at 1096.

Nor did Hall's trial counsel explicitly testify that he proceeded with the consent defense without Hall's approval. Mr. Mohler testified that he did not remember the specific details of his representation of Hall, but he did remember meeting with Hall several times. Mr. Mohler testified at the post-conviction hearing that his standard practice was to review the facts of the case with his client and speak about potential defenses and strategies. Mr. Mohler indicated that he would have considered a strategy of arguing that Hall had consensual sex with the victim early on in preparation of his case, and his case file contained multiple instances where the strategy of arguing consensual sex was noted. Mr. Mohler stated that he would not use a consent defense if there was no evidence of sexual intercourse. He did state that if there was evidence of intercourse, and his client did not rebut this evidence by his own testimony, then he would feel free to assert a claim of consensual sex. Mr. Mohler explained that Hall agreed to a general defense strategy that "they had the right person but this person did not commit the crime of rape," i.e., that Hall "did not have sexual intercourse with the victim in this case *forcibly* against her will on the date[s] in question." P-CR Tr. p. 17 (emphasis added).

This testimony does not support Hall's claim that Mr. Mohler presented an unauthorized defense. Although Mr. Mohler did not affirmatively state that he had Hall's express permission to proceed with a consent defense, neither he nor the State bore the

15

burden to do so. Hall bore the burden of proving by a preponderance of the evidence that he did not authorize Mr. Mohler to present this defense, and he failed to do so.

Hall bases much of his claim of an unauthorized defense on one portion of Mr. Mohler's testimony in which Hall's post-conviction counsel asked if Mr. Mohler had Hall's permission to argue consent to the jury. Mr. Mohler replied, "I don't recall whether I did *and under the facts of this case I wouldn't have done it anyway*." P-CR Tr. p. 18 (emphasis added).[5] Hall claims that this is an admission that the consent defense was unauthorized. Strictly speaking, this is evidence unfavorable to the post-conviction court's decision which we should not even consider.

Nevertheless we acknowledge that this testimony might be read as meaning that Mr. Mohler did not have Hall's permission to argue consent because he did not think he needed such consent. But Mr. Mohler's complete answer shows that he could not recall whether he received Hall's permission. And the fact remains that the post-conviction court simply did not believe Hall's testimony that he did not authorize the consent defense, which as the finder of fact it was entitled to do. Under our standard of review,

---

[5] Mr. Mohler went on to explain:

> I believed that my approach to the jury in this case would be a better strategy that what apparently Mr. Hall is presenting to the Court today which is that there should not have been any admission of the possibility of consensual sex because I believe to make that black and white argument to the jury in this kind of a case was not as believable and acceptable an argument as to allow them the possibility in this case that there easily could have been consensual sex because the facts of this case include the fact that the victim came home and admitted that she was naked in her bed upstairs while Mr. Hall was downstairs prior to the alleged rape.

P-CR Tr. p. 18.

16

we are unable to state that, simply because of this single, arguably equivocal answer, the post-conviction court was obligated to find that the consent defense was unauthorized. Thus, the post-conviction court did not clearly err in determining that Hall failed to meet his burden of showing that his trial counsel's performance was deficient.

**Conclusion**

Hall waived his argument that he was wholly deprived of the assistance of counsel by failing to present this claim in his petition for post-conviction relief. Hall's claim that this counsel presented an unauthorized defense does not give rise to a presumption of prejudice under Cronic, and is instead best addressed under the two-part test set forth in Strickland. Under Strickland, Hall failed to sustain his burden of proof that his trial counsel's performance fell below an objective standard of reasonableness, and we therefore need not consider whether he was prejudiced by his trial counsel's performance.

Affirmed.

VAIDIK, J., and BARNES, J., concur.